McILROY VS. BUCKNER.

1. FRAUD: *How Pleaded.*

   It is not sufficient to plead fraud generally, or merely to characterize acts as fraudulent. The facts and circumstances constituting the fraud must be set forth.

McIlroy vs. Buckner.

2. SAME: *Obtaining signature by.*

A plea by an obligor that the obligee fraudulently drew the obligation sued on different from the terms agreed on between them, and thus fraudulently procured him to sign it, under a misapprehension of its effect, without stating any act or device of the obligee to prevent him from reading and signing it intelligently, and without averring any abuse of confidence reposed in the obligee's skill and fidelity in drawing it, shows no fraud and no defense to the action on it.

3. PLEADING: ANSWER: *Consistency between paragraphs.*

If each paragraph of an answer be consistent with itself, it is not essential that they consist with each other.

4. SAME: *When answer abandoned by filing another.*

The filing of an amended and substituted answer after demurrer sustained to a former one, will not be considered as a waiver of the defendant's objections to overruling the former, unless such intention appear or be inferred from the record. If the new defense be distinct from the former, and there is nothing to indicate his intention to abandon it, he may still rely upon it in the supreme court.

5. PLEADING: ANSWER: *Denials.*

Denials in an answer must be specific of each controverted allegation in the complaint. The general issue at common law is inadmissible under our Code, unless it, in itself, amounts to a specific denial of some material allegation.

APPEAL from *Washington* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

*Gregg*, for appellant.

*Davidson, contra.*

EAKIN, J. This case has been here on a former appeal. In the opinion then delivered, the instrument sued upon was set forth at length. A demurrer to the complaint, sustained below, was here overruled, and the case was remanded. *31 Ark., 631.*

Upon the return of the case, defendant answered in several paragraphs, setting up several defenses, as follows:

1. That he did not contract in manner and form as alleged, nor authorize Denton Stark to make such a contract, nor consent to, nor ratify the same.

2. That he and said Stark, although partners in the banking business, were not partners in the matter of procuring the lien right, or release of Walker for the goods mentioned in the contract. That if Stark entered into any such agreement, it was without defendant's knowledge, consent or concurrence; and that defendant, himself, never made any such agreement or contract, nor ratified the same.

3. That he never begun nor prosecuted any suit against Adams & Bro., nor obtained any such judgment, nor procured any execution against them, nor levied any upon the goods and chattels mentioned, nor contracted with Walker for the release of any of his lien rights; nor represented that said firm of Denton D. Stark & Co. had any valid judgment against them, nor that defendant had. That if said Stark ever brought any such suit in the firm name (which is conceded), it was on a note not owned by the firm, but assigned to them for collection only, in which they had no interest; and if Stark prosecuted such suit, took out execution and levied on said goods, and procured Walker's release of his lien upon them, it was all without his knowledge or consent, and without the scope of the partnership business, and without authority from defendant.

4. That the release and transfer of the lien vested no right to the goods in Stark & Co., nor power to control them; and that Walker afterwards, before the transfer of the obligation to plaintiff, took possession of the goods,

McIlroy vs. Buckner.

and sold and converted them to his use, and realized $600, or some large sum.

5.. That Walker had no lien, as alleged, and that the instrument was without consideration.

A demurrer to the answer, and the several paragraphs separately, was sustained. Whereupon the defendant filed a second answer, saying: That in making the contract sued on, it was agreed upon between said Walker and Stark, who was the active partner in the firm, that nothing was to be paid to Walker unless the goods were sold on execution, and that Stark executed the writing with that understanding and agreement and no other, and that no sale took place, on account of an injunction; and "that said David Walker, knowingly and intentionally, drew up, or caused to be drawn up, said writing herein sued upon; fraudulently drafted the same so that said sum therein specified became payable from said Denton D. Stark & Co. to him, said Walker, before said drugs, medicines, etc., were sold upon said execution, and when the same could not be sold upon said execution, as aforesaid; thus he, the said Walker, fraudulently deceived the defendant, Stark, and caused him to sign the said writing for said company under the belief and with the understanding that it did not bind the said Stark & Co. to pay said sum of $600, or any part thereof, unless said drugs, medicines, merchandise, chattels and effects were sold on execution; and *in that way* he, the said Walker, fraudulently procured the execution and delivery of said writing."

To this answer, also, a demurrer was sustained. The defendant rested, and, after judgment, appealed.

1. FRAUD: How pleaded. It is not sufficient to plead fraud generally, or merely to characterize actions as fraudulent. The facts and circumstances constituting the fraud should be set forth. There

McIlroy vs. Buckner.

should be some concealment, misrepresentation, craft, finesse, or abuse of confidence, by which another is misled, to his detriment; and these, or some of them, must be alleged and proved. Mere epithets, or adverbs characterizing conduct, which, in itself, may be innocent, amount to nothing. This has been repeatedly ruled by this court. See cases cited in *Rose's Digest*, *Title Fraud*, *Nos. 37 and 39*, and, also, *Twombly v. Kimbrough, 24 Ark., 464.*

The written contract is the best evidence of the terms to which the final assent of the contracting parties was given, and they do not always conform to the verbal agreements or understandings of the parties, in the course of negotiation. They can not be varied by parol evidence, nor is such difference a badge of fraud. If Walker finally drew up the contract as it is, and the defendant's partner signed it intelligently, with full opportunity of understanding its contents, and without any arts or devices on Walker's part to mislead him, or prevent him from reading it, and without any abuse of confidence reposed in his skill or fidelity by Stark, there would be no fraud in the matter. No such means of procuring the signature are alleged, and the plea is substantially deficient in stating matter constituting a defense, and therefore bad. It is not even a good plea defectively stated and entitled to be made more definite, by motion. A written contract, intelligently signed by the parties, is not void because it differs from their verbal understanding beforehand. There was no error in sustaining the demurrer to the second answer.

It remains to consider whether we may go back, on this appeal, to consider the action of the court in sustaining the demurrer to the reversal paragraphs of the first answer— or must the first answer be considered as having been abandoned, when defendant, after demurrer to it sustained,

*(margin note)* 2. FRAUD: In obtaining contract; what must be shown.

*(margin note)* 3. ANSWER: Consistency between paragraphs

McIlroy vs. Buckner.

put in a different one. The second, although so described in the notes of the clerk, does not purport to be an amended but a distinct answer. Defendant may put in a number of defenses in distinct paragraphs, and if each is consistent with itself, it is not essential that they should consist with each other. If a demurrer to some of them should be sustained, and issue be taken on the others, and trial had, the defendant can not be deprived of the benefit of those ruled out, if they were in fact good, but may have relief on final appeal. Such has been the practice of this court. Or, if all have been ruled out, the decision as to each may be reviewed; and it can make no difference in principle that one of the defenses was put in by leave at a different time from the others. They all stand on the same footing in the order of pleading. It is not like answering over to a declaration, after demurrer to it sustained; nor, under the old practice, pleading to the action, after plea in abatement held bad.

A defendant, of course, has the right to withdraw or abandon an answer after it has been held bad on demurrer, and to file an amended and substituted one; in which case he may be considered as having abandoned his objections to overruling the former. But in such case his intention must appear, or be inferred from the record. If the new defense be distinct from the others, and there be nothing to indicate a design, on the defendant's part, to abandon them, he may still rely upon them here.

In considering the several paragraphs of the first answer it will be useful to revert to the complaint, and see what material facts are specifically stated as constituting the cause of action. The Code provides (*Gantt's Digest, sec. 4569*) that the answer shall contain "a denial of each allegation of the complaint controverted by the defendant, or

4. ———:
When
abandoned
by filing
another.

McIlroy vs. Buckner.

of any knowledge or information thereof sufficient to form a belief;" and also, if necessary, "a statement of any new matter constituting a defense, counter-claim or set-off."

In estimating the force and effect of the decisions in the 5. DENIALS: Code states in settling the practice under what is called the specific. Must be new system of procedure, we must carefully distinguish between the language of their several Codes. Whilst the general features of the new system are the same in all the states which have substituted it for the old common law and statutory system, there are still differences amongst the several state Codes which, if overlooked, would make the decisions of one state unsafe precedents for another. With regard to the answer, these differences are material. In some states a *general* denial is expressly permitted. This is omitted in our Code, which, as above quoted, requires a denial of *each* controverted allegation; and further provides that every material allegation in a pleading not *specifically* controverted by the answer or reply must be taken as true. (*Ib., sec. 4608*). Taken together these sections make it obligatory on the pleader specifically to deny every material allegation. This has been expressly held in Kentucky under a Code like ours, in a case where there had been a general denial of all the allegations of the complaint. The answer was held to be "wholly unavailing." (*Corbin, etc., v. The Commonwealth, 2 Met., 380*). It follows that the general issue at common law has no place in our system, unless it in itself amounts to a *specific* denial of some material allegation.

The material allegations of the complaint were: That defendant and Denton D. Stark were doing business as bankers, under the firm name of Denton D. Stark & Co.; that, as a firm, they made the promise in writing set forth in the former opinion, and delivered the same to David

Walker, who afterwards assigned and delivered it to complainant; that previously said firm had recovered judgment in the circuit court against Adams & Brother for a sum over $600, and that at the time Walker made the release and transfer of his lien, said firm of Denton D. Stark & Co., by Stark, the acting member thereof, represented to Walker that the judgment was valid; that execution had been issued and levied upon the goods in question, which would be sold in satisfaction; that said judgment was in fact illegal and invalid, and was afterwards enjoined, and the property restored to the defendants in execution, so that no sale was nor could be made.

The first paragraph of the answer is simply the general issue in assumpsit at common law, accompanied with a denial that defendant had authorized Stark to make the contract. It is argumentative, and *specifically* denies nothing. The charge was not that defendant had made the contract, or authorized Stark or any one else to make it—it was that defendant and Stark were partners, and that the firm had executed the writing to Walker.

A legal liability resulted from this on the part of defendant. He does not specifically deny that they were partners, or that the firm executed the writing, nor in this paragraph, set forth any new matter to relieve himself of the liability imposed by the law. The authority to Denton to bind both resulted from the partnership, unless there were something shown in the complaint or set up in the answer to take away this authority, or make it appear that the authority did not extend to this transaction. *Prima facie*, the transaction appears to be within the scope of banking business. The demurrer to this paragraph was good.

The second paragraph admits that defendant and Stark

were partners in the banking business, but denies that the partnership extended to the particular business in question. *Prima facie*, as we have said, the transactions appear within the scope of banking business. It is necessary that bankers should collect their debts. Within the general purview of their business partners may bind the firm. If there had been a special agreement between defendant and Stark, that this judgment in the firm name against Adams & Co. should be the property of Stark, and withdrawn from the partnership effects—or a matter in which neither had any interest, and that neither should use the firm credit in securing the fruits of the judgment; that should have been shown specifically, with the further fact of notice thereof to Walker. Without such special agreement, and notice thereof to Walker, they were bound by all acts of each other within the general scope of the business. They accredited each other to the world.

This paragraph of the answer was bad.

The third paragraph is liable to the same objection. It concedes that Stark procured the judgment, and the release of Walker's lien, but sets up that the judgment against Adams & Co. was obtained on a note sent them for collection. If assigned to them for collection, a judgment obtained on it in the firm name would not be, on that account, invalid, and Walker might safely deal with them, or either of them, with regard thereto. It is usual for bankers to sue and recover judgments in the firm name, and, if they do so, strangers dealing with them with regard thereto are not obliged to inquire into the original causes of action, or question their joint interest.

If Stark abused his power as a partner, Walker, without notice, should not suffer.

The fourth paragraph denies that any interest in the

goods, etc., passed to Stark & Co. by Walker's release and transfer of the lien. So much was matter of law, and not pleadable. If he had no lien, and falsely represented that he had, and did not in fact release any, that should have been set up specifically. The answer, however, goes on to set up as new matter, that after the execution of the instrument to Walker and before its transfer to plaintiff, Walker got possession of the goods, sold them for a large amount, and kept the money, or converted it to his own use.

This was new matter, set up by way of defense, upon which the law without reply raised an issue.

Walker had a connection with the property which enabled him to get possession, and whether he did so rightfully or wrongfully, the possession should have inured to the benefit of those to whom he had assigned all his rights for a valuable consideration. He would be under an implied contract, if they chose to waive the tort, as the answer in effect does, to pay over the money received. It would have been his duty to credit the proceeds upon the note. He would not be allowed to recover upon it, and put defendants to a cross-action. And this defense attached to the writing in the hands of a subsequent assignee. It was not in its nature such paper as was assignable by the law merchant, nor a note placed on the footing of bills of exchange. The demurrer to this paragraph of the answer should have been overruled.

The fifth plea, of no consideration, was bad. Walker is not alleged to have falsely represented that he had a lien, or to have warranted it. He did release what right he had and denuded himself of all claim. The defendants had the convenience and security of this, and were best able to judge of its advantage. It is no defense afterwards to say the lien was not valid.

For error in sustaining the demurrer to the fourth paragraph of defendant's answer, let the judgment be reversed and the cause remanded for further proceedings consistent with law and this opinion.