Danny W. WISEMAN *v.* STATE BANK & TRUST, N.A.

93-177                                854 S.W.2d 725

Supreme Court of Arkansas
Opinion delivered May 24, 1993

*Baim, Gunti, Mouser, DeSimone & Robinson*, by: *Judith A. DeSimone*, for appellants.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *J. Maurice Rogers* and *Mark K. Halter*, for appellee.

Tom Glaze, Justice. On June 29, 1992, the appellants, Danny and Sonya Wiseman, visited their local Toyota-Hyundai car dealership in Pine Bluff and selected to purchase a 1988 Toyota Celica. The Wisemans informed their salesman, Mr. Bill Tucker, that, in order for them to buy the car, an installment plan financing arrangement would have to be obtained. Tucker provided the Wisemans with a credit application which had been supplied to the dealership by the appellee, State Bank and Trust, N.A. Tucker explained that State Bank was not the exclusive financing agent of the dealer and that the Wisemans were not required to finance the car's purchase through that bank. Nevertheless, the Wisemans completed and executed the credit application. Tucker then faxed the application to State Bank for its acceptance in Tulsa, Oklahoma.

State Bank is a national banking association under the National Bank Act, Rev.Stat. § 5157, 12 U.S.C. § 37 (1988). Its charter address and principal place of business is Tulsa, Oklahoma. Although State Bank does not operate any branch

offices within the state of Arkansas, it does have ties to our state—a majority of its stock is owned by an Arkansas bank holding company, Arvest Bank Group, Inc.

Mr. Rick Huck, an employee of State Bank, reviewed the Wisemans' credit application, determined their credit was adequate for participation in the financing program at an interest rate of thirteen percent (13%) per annum, and telephoned Tucker informing him that the Wisemans' application for credit had been accepted. Huck then directed Tucker to have the Wisemans complete and execute a credit loan contract and security agreement which had also been provided by State Bank. The Wisemans returned to the dealership on July 1, 1992, to execute the required documents. The loan contract contained the following relevant terms: (1) the interest rate on financing through State Bank would be thirteen percent (13%) per annum, and (2) the parties intended and agreed that the contract was to be governed by and construed under the laws of Oklahoma. After the Wisemans executed the agreement, Tucker forwarded it to State Bank for its acceptance and execution. The dealer then allowed the Wisemans to drive the car home. On July 2, 1992, in Tulsa, Huck reviewed, approved, and executed the contract on behalf of State Bank.

The Wisemans made the first three installment payments of $174.56 prior to stopping payments. On September 18, 1992, they instituted a declaratory judgment action in the Circuit Court of Jefferson County, alleging that the loan contract violated the maximum lawful rate of interest under the Arkansas Constitution, and thus, was usurious.[1] The parties entered a joint stipulation of facts and each filed a motion requesting summary judgment. By letter opinion, the trial judge found there were no genuine issues of material fact and granted State Bank's motion for summary judgment by refusing to apply Arkansas's usury law

---

[1] Article 19, Section 13 of the Arkansas Constitution reads as follows:
    The maximum lawful rate of interest on any contract entered into after the effective date hereof cannot exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.
The parties stipulated that on the date the contract was entered the Federal Reserve Discount Rate was three percent (3%). Accordingly, the parties agree that a contract charging 13% in interest is usurious and void if governed by the law of Arkansas.

and holding that the parties' contract was not invalid for the two following independent and alternative reasons: first, under the choice-of-law principle, the law of Oklahoma, and not Arkansas, governed; and second, even if the choice-of-law principle required application of Arkansas law to the parties' contract and the subject transaction, the National Bank Act, Rev.Stat. § 5197, as amended, 12 U.S.C. § 85 (1988), and the doctrine of federal preemption, mandate the application of Oklahoma's interest rate provisions. Although the trial court may be correct for both reasons, we affirm on the basis of the National Bank Act because we believe that Act clearly controls the parties' transaction here.

The interest rate which a national banking association may charge is governed by the National Bank Act, Rev.Stat. § 5197, 12 U.S.C. § 85 (1988), which reads in pertinent part as follows:

> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state. . . where the bank is located, . . .

On appeal, the Wisemans impliedly concede that State Bank is a banking association created under the National Bank Act. Accordingly, the rate of interest State Bank can charge on any loan is governed under 12 U.S.C. § 85 (1988) and is the rate allowed by the laws where State Bank is "located." The Wisemans do not contend below or on appeal that charging interest at a rate of thirteen percent is violative of Oklahoma's usury law. Instead, for reversal, the Wisemans advance the argument that State Bank is not "located," as that phrase is defined under 12 U.S.C. § 85 (1988), in the state of Oklahoma. Specifically, the Wisemans contend that because Arvest Bank Group, Inc., an Arkansas Corporation, owns a majority of State Bank's stock, the Bank in actuality is "located" in Arkansas. We disagree.

In *Marquette Nat'l Bank of Mpls* v. *First of Omaha Service Corp.*, 439 U.S. 297, 99 S. Ct. 540, 58 L.Ed.2d 534 (1978), the United States Supreme Court was granted an opportunity to interpret 12 U.S.C. § 85 (1988) under facts very similar to those here. The First national Bank of Omaha, situated in Omaha, Nebraska, solicited Minnesota customers to take part in its credit

card business. The Omaha Bank charged Minnesota customers interest on the balance due at a rate permitted under the laws of Nebraska, but in excess of that permitted by the laws of Minnesota. Marquette National Bank, situated in Minneapolis, Minnesota, brought suit to enjoin Omaha Bank's credit card business in Minnesota until such time as the Omaha Bank complied with the usury laws of Minnesota. A unanimous Court first held that the Omaha Bank was an instrumentality of the federal government, and as such was necessarily subject to the paramount authority of the United States. Hence, the Court concluded that the interest rate that a national bank may charge was governed by federal law. Further, the Court stated that under 12 U.S.C. § 85 (1988), the Omaha Bank was "located" in Nebraska, and accordingly, could charge its customers, whether in-state or out-of-state, a rate of interest permissible under the laws of Nebraska.

■ Concerning the definition of "located"—the issue now before our court—the Court stated the following:

> There is no question but that Omaha Bank itself, apart from its BankAmericard program, is located in Nebraska. Petitioners concede as much. [Cites omitted.] The National Bank Act requires a national bank to state in its organization certificate 'the place where its operations of discount and deposit are to be carried on, designating the State, Territory, or district, and the particular county and city, town, or village.' 12 U.S.C. § 22. The charter address of Omaha Bank is in Omaha, Douglas County, Nebraska. The bank operates no branch banks in Minnesota.

*Marquette*, 439 U.S. at 309, 99 S. Ct. at 545-546, 58 L.Ed.2d at 542. In response to Marquette National Bank's argument that since the Omaha Bank systematically solicited Minnesota residents for credit cards to be used in transactions with Minnesota merchants, the Omaha Bank, therefore, must be deemed to be "located" in Minnesota for purposes of its credit card program, the Court concluded:

> The congressional debates surrounding the enactment of § 30 were conducted on the assumption that a national bank was "located" for purposes of the section in the State named in its organization certificate. [Cite omitted.]

Omaha Bank cannot be deprived of this location merely because it is extending credit to residents of a foreign state.[2]

*Marquette*, 439 U.S. at 310, 99 S. Ct. at 546-547, 58 L.Ed.2d at 543.

■ Accordingly, we find Wisemans' argument as to Arvest Bank Group Inc.'s stock holdings in State Bank to be without merit. It is well settled that a corporation is an entity separate from its stockholders. *Shipp* v. *Bell & Ross Enterprises, Inc.* 256 Ark. 89, 505 S.W.2d 509 (1974). Consequently, the domicile of the owner of corporate stock has no bearing on the corporation's "location."

■ Here, State Bank's organization certificate recites its charter address as Tulsa, Oklahoma. Also, as was the case in *Marquette*, State Bank does not have any branch offices in the state of Arkansas. Therefore, under the rationale and holding in *Marquette*, we conclude that State Bank is "located" in the state designated in its organization certificate—Oklahoma. Thus, State Bank is permitted to charge interest "on any loan" at rates permissible under the law of Oklahoma. The Wisemans have not alleged or argued that the rates charged by State Bank are usurious under Oklahoma law. For the reasons above, we affirm the trial court's holding that the Oklahoma interest rate provisions govern the parties' transaction and their loan agreement is valid.

CORBIN, J., not participating.

---

[2] Section 85 was originally enacted as § 30 of the National Bank Act of 1864, 13 Stat. 108. Section 30 was, in its pertinent parts, virtually identical with the current § 85.