Pat HAMES and Ben Robinson *v.*
Marybeth CRAVENS

97–687                                              966 S.W.2d 244

Supreme Court of Arkansas
Opinion delivered April 9, 1998

438

*Harrill & Sutter, PLLC,* by: *L. O'Neal Sutter* and *Sherri McDonough,* for appellants.

*Kemp, Duckett, Spradley & Curry,* by: *Stephen L. Curry,* for appellee.

W.H. "Dub" Arnold, Chief Justice. This is an appeal from the Pulaski County Circuit Court, Second Division, and from an order dismissing the appellants' complaint for lack of subject-matter jurisdiction. Finding no merit in appellants' arguments, we affirm.

Appellants, Ben Robinson and Pat Hames, are husband and wife and, respectively, own 1% and 49% of the issued and outstanding common stock of Partners in Rehab, Inc., a closely-held Arkansas corporation. Appellee Marybeth Cravens owns the remaining 50% of the Partners stock. Hames and Cravens are the sole directors of Partners. On May 16, 1996, the appellants filed suit against Cravens in the Pulaski County Circuit Court, alleging fraud and breach of fiduciary duty. Specifically, Robinson and Hames claim that, at the time of Partners's incorporation, Cravens intended to defraud them of proprietary information they contributed to Partners. Additionally, Robinson and Hames maintain

that Cravens violated her fiduciary duty by appropriating the proprietary information for the benefit of Rehab. Plus, Inc., a corporation allegedly organized by Cravens or by members of Cravens's family and in which Cravens plays some management role. In particular, appellants allege that Cravens solicited contracts with two Partners clients who then terminated contracts with Partners shortly after the incorporation of Rehab Plus.

According to the complaint, Robinson and Hames are personal guarantors of most of Partners's corporate debt, and Cravens's actions have altered the value of corporate debts for which the appellants are liable. Notably, at the time of the circuit court hearing, Partners was also the subject of a dissolution proceeding pending in the Pulaski County Circuit Court, styled *In re The Judicial Dissolution of Partners in Rehab, Inc.*, civil docket No. CV-96-6911.

On June 10, 1996, Cravens filed a motion to dismiss the appellants' complaint pursuant to Ark. R. Civ. P. 12(b)(1) and 12(b)(6), reasoning that the case was actually a derivative action to redress harm to Partners and not to appellants, individually. After a hearing on January 28, 1997 and based upon a reading of the complaint, Judge Chris Piazza agreed that, although the appellants alleged that Cravens harmed them, either individually or through a competitive business, the facts asserted and relief requested, by their very nature, involved the question of whether Partners suffered damages. The circuit court recognized that the allegations in the complaint constituted grounds for a derivative action, which sounds in equity and must be maintained in chancery court. Concluding that the appellants lacked standing to assert their claims individually, Judge Piazza dismissed the complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

In reviewing a trial court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Neal v. Wilson*, 316 Ark. 588, 595-96, 873 S.W.2d 552 (1994) (citing *Gordon v. Planters & Merchants Bancshares, Inc.*, 310 Ark. 11, 832 S.W.2d 492 (1992); *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989)); *Mid-South Beverages, Inc.*, 300 Ark. 204, 205, 778 S.W.2d (1989)

(citing *Battle*, 298 Ark. 241)). Further, we note that a trial judge must look only to the allegations in the complaint to decide a motion to dismiss. *Neal*, 316 Ark. at 596 (citing *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)); *Mid-South Beverages, Inc.*, 300 Ark. at 205 (citing *Battle*, 298 Ark. 241)).

On appeal, the appellants first query whether they have standing, in their individual capacities, to assert a claim for an injury suffered by Partners and its shareholders. In Arkansas, the well-settled answer is no. As a general rule, a corporation is a distinct entity from its stockholders. *Wiseman v. State Bank & Trust, N.S., Inc.*, 313 Ark. 289, 854 S.W.2d 725 (1993). However, when a shareholder believes that the corporation has been harmed, he may be entitled to bring an action in a derivative suit, in the corporation's name, to seek redress for that injury. *See Taylor v. Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983); Ark. R. Civ. P. 23.1; Ark. Code Ann. § 4-26-714 (Repl. 1991). Although the shareholder also may be injured, secondarily, the primary injury is to the corporation, and the shareholder's cause of action is derivative and not direct. Moreover, in Arkansas, a shareholder's derivative suit is an equity action maintainable in the chancery court. *See Red Bud Realty Co. v. South*, 153 Ark. 380, 241 S.W.2d 21 (1922).

In an apposite case, *Walker v. Hyde*, 303 Ark. 615, 798 S.W.2d 435 (1990), a plaintiff-shareholder sued defendants, also shareholders, for deprivation of majority control and ownership of the corporation, and loss of good will, business enterprise, future gross receipts, and net profits. Additionally, like the case at bar, the plaintiff sought relief from corporate indebtedness that she had personally guaranteed. Upon review of the complaint, this court affirmed the trial court's dismissal of the action. Specifically, this court reasoned that the relief sought by the plaintiff should be granted to the corporation and not to a shareholder. Any action to recover for the alleged losses was derivative in nature and an individual suit was not the proper route for relief. *Walker*, 303 Ark. at 618. Similarly, the trial court correctly concluded in the instant case that the appellants' claims essentially constituted a

derivative action, which could be maintained pursuant to Ark. Rule Civ. P. 23.1.

Our decision in this case is not to imply that shareholders may never bring a direct suit. For example, a shareholder may sue individually in an action to enforce that shareholder's voting rights, to compel the payment of dividends, or to protect minority shareholders. Contrary to the case at bar, these actions contemplate a direct injury to the shareholder distinct and separate from harm caused to the corporation. *See* 12B Fletcher, *Cyclopedia of Corporations* §§ 5915, 5922 (Perm. Ed. 1984).

█ Significantly, plaintiffs may prefer characterizing their claims as direct rather than derivative. First, derivative actions impose more stringent procedural requirements. *See* Ark. R. Civ. P. 23.1. Second, any recovery in a derivative action accrues to the corporation and not to the shareholders, individually. Third, a derivative action in chancery court precludes a trial by jury. Therefore, a plaintiff may carefully plead facts in a complaint in order to proceed in a direct action. For example, by alleging a direct injury, a plaintiff can maintain a direct action even if the corporation was similarly harmed. *See Brandon v. Brandon Constr. Co.*, 300 Ark. 44, 48, 776 S.W.2d 349 (1989) (citing 12B Fletcher, *Cyclopedia of Corporations* § 5911 (Perm. Ed. 1984)). Here, we simply find that the appellants failed to plead any individual harm.

█ █ Arkansas has adopted a clear standard to require fact pleading. According to Ark. R. Civ. P. 8(a)(1), a pleading that sets forth a claim for relief shall contain "a statement in ordinary and concise language of facts showing . . . that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state facts upon which relief can be granted." This court has stated that these two rules must be read together in testing the sufficiency of the complaint; facts, not mere conclusions, must be alleged. *Brown v. Tucker*, 330 Ark. 435, 438, 954 S.W.2d 262 (1997) (citations omitted). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and pleadings are to be liberally construed. *Id.*; Ark. R. Civ. P. 8(f).

■ Although the appellants' complaint alleges that Cravens's conduct after Partners's incorporation caused Partners harm, it fails to plead facts demonstrating that any action prior to incorporation harmed them individually. Regarding direct harm, the appellants merely assert that Cravens "intended to deprive them of the fruits of their efforts at the time she agreed to incorporate Partners." In another paragraph of the complaint, the appellants claim that "but for Cravens's misrepresentation," they would not have developed Partners, given Cravens proprietary information, or guaranteed corporate debt. However, the proprietary information allegedly misappropriated by Cravens belonged to Partners and not to the appellants, individually, at the times relevant to the claimed misconduct. Here, the trial court properly concluded that the appellants lacked standing to assert the claims arising from their allegations because, by their very nature, the claims related to harm suffered by the company.

■ ■ In any event, to plead a cause of action for fraud, the appellants must prove the existence of the following elements: (1) a false representation, usually of a material fact, (2) knowledge or belief by the defendant that the representation is false, (3) intent to induce reliance on the part of the plaintiff, (4) justifiable reliance by the plaintiff, and (5) resulting damage to the plaintiff. *Wiseman v. Batchelor*, 315 Ark. 85, 88-89, 864 S.W.2d 248 (1993). Moreover, to be well pleaded, fraud must be specifically alleged. *Beam Bros. Cont. v. Monsanto Co.*, 259 Ark. 253, 263, 532 S.W.2d 175 (1976). In *Burns v. Burns*, 199 Ark. 673, 135 S.W.2d 670 (1940), this court noted that the complaint must state something more than mere conclusions and must clearly set forth the facts relied upon as constituting the fraud. Additionally, in the very early case of *McIlroy v. Buckner*, 35 Ark. 55 (1880), this court said:

> It is not sufficient to plead fraud generally, or merely to characterize actions as fraudulent. The facts and circumstances constituting the fraud should be set forth. There should be some concealment, misrepresentation, craft, finesse, or abuse of confidence, by which another is misled, to his detriment; and these, or some of them, must be alleged and proved. Mere epithets, or adverbs characterizing conduct, which, in itself, may be innocent, amount to nothing.

*Id.* at 558-59.

■ Even drawing all reasonable inferences in favor of the complaint, the appellants fail to plead a case of fraud, which must include some facts regarding the alleged misrepresentation and Cravens's intent to defraud them. Where the complaint states only conclusions without facts, we will affirm the trial court's decision to dismiss the complaint pursuant to Rule 12(b)(6). *See Brown,* 330 Ark. at 438.

The appellants' second query is whether shareholders in closely held corporations should be required to bring a derivative action when the corporation is operated more as a partnership than as a corporation. Appellants urge us to decide that the answer to this question should be "no" and that a direct action is permissible. In addition to other persuasive authority from foreign jurisdictions, appellants cite *Hikita v. Nichiro Gyogyo Kaisha, Ltd.,* 713 P.2d 1197 (Alaska 1986), to support their position urging this court to adopt the modern trend permitting a direct shareholder action. However, *Hikita* noted only two major exceptions to the general rule, barring individual shareholder actions for corporate injuries: (1) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders, and (2) where a special duty, such as a contractual duty, exists between the shareholder and the alleged wrongdoer. *Id.* at 1199 (citations omitted).

■ Arguably, the two actions classified in *Hikita* as "exceptions" to the general rule are actually independent actions to redress injuries suffered primarily by the shareholder and secondarily, if at all, by the corporation. In any event, the appellants' complaint does not plead facts to support a distinct and separate harm, nor does it allege that Cravens was bound by and breached any type of pre-incorporation agreement regarding the proprietary information, which would give rise to a direct cause of action. Reading the allegations in the appellants' complaint, any injury suffered by the appellants is secondary to the injury suffered by Partners, and that is the essence of a derivative action.

■ Viewing the facts alleged in the complaint as true and in the light most favorable to the appellants, the trial court prop-

erly dismissed the appellants' complaint for lack of subject-matter jurisdiction. Accordingly, we affirm.

NEWBERN, CORBIN, and BROWN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Ben Robinson and Pat Hames, husband and wife, formed Partners In Rehab., Inc., with Marybeth Cravens. Mr. Robinson and Ms. Hames alleged that they agreed to invest in and work for the corporation in exchange for Ms. Cravens's efforts to obtain contracts with the Riley Corporation and the Catlett Corporation. They further alleged that thereafter Ms. Cravens formed Rehab. Plus, Inc., and solicited the Riley Corporation and Catlett Corporation accounts for Rehab. Plus, Inc.

The complaint, filed in Pulaski Circuit Court, was dismissed solely on the ground that it stated a stockholder's derivative claim, Ark. R. Civ. P. 23.1, and should have been filed in a chancery court. The Circuit Judge did not have before him a specific allegation of failure to state a claim for fraud, nor did he make any ruling in that respect. The real issue in this case is whether two of three shareholders must proceed against the other for breach of her fiduciary obligation to them only in the derivative format before a chancery court.

At common law, a shareholder had no means of redress against officers and majority shareholders whose actions injured their interests in corporations; thus, equity courts began to provide relief in the nature of the derivative suit early in the 19th century. That history is recited in *Ross v. Bernhard*, 396 U.S. 531 (1970), in which the Supreme Court recognized that the sole reason for equity jurisdiction in the so-called equitable stockholder's derivative action was lack of standing such plaintiffs once had in law courts. The Supreme Court held that, after the standing matter was settled, the claim on behalf of the corporation could proceed at law with the right of a jury trial guaranteed. *Id.* That means, of course, that in a federal court the judge decides the standing issue and then, assuming the remedy to be pursued on behalf of the corporation is a legal remedy, a jury may decide the facts and reach a verdict on the claim.

In Arkansas, our archaic division of law and equity courts leaves us with cases like this one in which the fundamental claim may be one at law, but it is thrown into an equity court, regardless of the remedy sought, because two hundred years ago the law courts were not flexible enough to allow such a case to be heard where it belonged.

There is a means to end this artificial situation when the standing question has to do with a close corporation. Mr. Robinson and Ms. Hames have presented a number of cases in their brief, from a variety of jurisdictions, in which it has been held that shareholders in a close corporation may proceed directly against others who have caused injury to their interests in the corporation. The majority has chosen to discuss only one of those cases and has ignored the others, thus giving short shrift to a meritorious argument. Some of the examples of the cases cited in support of the argument follow.

In *Thomas v. Dickson*, 250 Ga. 772, 301 S.E.2d 49 (1983), the Georgia Supreme Court dealt with the issue as one of first impression. Three men formed a corporation of which they became the officers and operators. One of them died. His widow, who inherited one third of the stock of the corporation, sued the other two incorporators claiming they had conspired to keep her share of the profits and dividends, had reneged on a promise to pay her a "death benefit," and had reduced the value of her stock. In response to the argument that the plaintiff was limited to bringing a derivative suit, the Court stated:

> The general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit . . . .
>
> Although Georgia follows the general rule, we believe that in exceptional situations this Court . . . should look at the "realistic objectives" of a given case to determine if a direct action is proper . . . .
>
> In the instant case, the reasons requiring derivative suits do not exist. The reasons underlying the general rule are that 1) it prevents a multiplicity of lawsuits by shareholders; 2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3) it protects the interests of all shareholders

by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4) it adequately compensates the injured shareholder by increasing the value of his shares . . . .

We will now examine this case to see if these reasons are applicable. First, Mrs. Dickson is the *only* injured shareholder; consequently, there can be no multiplicity of lawsuits, and there is no concern that a recovery by her will prejudice the rights of other shareholders.

In addition, Mrs. Dickson would not be adequately compensated by a corporate recovery. For a shareholder, the potential benefit of a corporate recovery in such cases is the increase in the value of his or her shares . . . . There would be no such benefit to Mrs. Dickson, however, since, in a closely held corporation, there is no ready market for her shares.

The final consideration underlying the general rule, the protection of creditors, is also not present in this case . . . . [T]here was no outstanding or dissatisfied creditor. [Internal citations omitted.]

*Thomas v. Dickson*, 301 S.E.2d at 50-51. All of the reasons recited by the Georgia Court apply in the case now before us.

In *Richards v. Bryan*, 879 P.2d 638 (Kan.App. 1994), the Kansas Court of Appeals reached the same result with respect to allegations by minority shareholders in a close corporation of a "freeze out" by the majority. It recognized the general proposition that "[a] shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Id.* at 646. Then the Court considered the close-corporation exception, recognizing that "an increasing number of courts are abandoning the distinction between a derivative and a direct action because the only interested parties are the two sets of shareholders." *Id.* at 647. It recited the concern about the corporation, under the control of the alleged wrongdoers, being the beneficiary of a derivative action, citing 2 O'Neal and Thompson, *O'Neal's Close Corporations*, § 8.11, p. 122 (3d ed. 1992), and then the following:

In its Principles of Corporate Governance: Analysis and Recommendations § 7.01(d), p. 731 (Tentative Draft No. 11, 1991), the American Law Institute recommends allowing an independent cause of action for freeze-outs in the close corporate setting under certain circumstances:

> If a corporation is closely held . . . , the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation . . . to a multiplicity of actions, (ii) materially prejudice the interests of creditors in the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

See, *Schumacher v. Schumacher*, 469 N.W.2d 793, 798-99 (N.D.1991).

879 P.2d at 647-48.

The same result was reached by the Ohio Supreme Court in *Crosby v. Beam*, 548 N.E.2d 217 (1989), a case in which minority stockholders in a close corporation claimed the majority stockholders had breached the fiduciary duty owed to the minority stockholders by misappropriating corporate funds. It was pointed out that, if the minority shareholders in a close corporation were forced to sue on behalf of the corporation, then any recovery would go to the corporation that remained under the control of the majority.

Underlying these cases permitting close-corporation shareholders to sue directly, in the circumstances stated, is the fact that most such corporations are operated more like partnerships than corporations. *See Johnson v. Gilbert*, 127 Ariz. 410, 621 P.2d 916 (1980); *Crosby v. Beam, supra.* In the case now before us, it would be wrong to require Mr. Robinson and Ms. Hames to sue on behalf the corporation (assuming the petition to dissolve it has not yet been granted) so that the shares owned by Ms. Cravens could benefit by a recovery from Ms. Cravens. *See Atkinson v. Marquart*, 112 Ariz. 304, 541 P.2d 556 (1975). It makes sense to require the derivative format with respect to a corporation having many shareholders whose interests require protection against the wrong allegedly perpetrated against all, but not when the alleged wrong-

doer is the only other shareholder and the rights of creditors and other (in this case nonexistent) shareholders are not prejudiced. *Watson v. Button*, 235 F.2d 235 (9th Cir. 1956).

The case of *Schumacher v. Schumacher*, cited above in the quotation from the *Richards* case, is especially interesting in the respect that it deals properly with the matter of precedence of legal and equitable issues resulting from one set of facts. The Supreme Court of North Dakota concluded that it was necessary to have a jury trial of legal issues arising from breach of a fiduciary relationship owed by one close-corporation shareholder to another prior to deciding the entitlement to equitable remedies. If the right to equitable relief were tried first, and the factual issues decided in that context by the court without a jury, then the plaintiff would, by the application of law of the case, be denied a jury trial.

Although it has been said that breach of a fiduciary duty is an equitable claim, *Watson v. Buton, supra*, that may well depend upon the remedy sought. We have no definitive ruling on whether breach of a fiduciary relationship must be pursued in equity, but we note that we have entertained appeals from both chancery and circuit courts where breach of a fiduciary relationship was the basis for a remedy, legal or equitable, being sought. *See, e.g., Wilson v. Wilson*, 327 Ark. 386, 939 S.W.2d 287 (1997)(appeal from chancery where remedy sought was an estate accounting and setting aside a deed); *Alexander v. Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995)(appeal from circuit court where remedy sought was damages); *Green v. Jones-Murphy Properties, Inc.*, 232 Ark. 320, 335 S.W.2d 822 (1960)(appeal from circuit court where remedy awarded was damages).

The complaint in this case, as abstracted by the appellee, makes it clear that money damages is the remedy being sought, and that remedy belongs in a circuit court. Even if, however, the matter were one to be tried by a chancellor as a direct, rather than derivative, action, the proper procedure for the Trial Court would have been to transfer the case rather than dismiss it. *See Linder v. Howard*, 296 Ark. 414, 757 S.W.2d 549 (1988).

I respectfully dissent.

CORBIN and BROWN, JJ., join in this dissent.