# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 17-2759

———————————————

Donna K. Rains; Alice Belle Laurendine

*Plaintiffs - Appellants*

v.

Oscar Homer "O.H." Jones, III, et al.

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

————————

Submitted: April 10, 2018
Filed: September 24, 2018

————————

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

————————

LOKEN, Circuit Judge.

This is a dispute among six siblings primarily over ownership and control of OKISDA, Inc. (OKISDA), a family corporation their mother, Eunice Ashabranner, established in 1974. In their First Amended Complaint, the Plaintiffs, sisters Donna Rains and Alice Laurendine, assert multiple claims against OKISDA, their brother, Oscar Homer Jones, III ("O.H."), and sisters Karen Loden, India Huddleston, and

Sandra Ballard. After substantial, contentious discovery, the district court[1] concluded that "nearly all [the claims] hinge on whether the transfer of Class A [voting common] stock from [Ashabranner's revocable] Trust to Mr. Jones was valid." The court held the transfer valid and granted Defendants summary judgment dismissing all claims. Plaintiffs appeal, contending the court made five reversible errors. Reviewing the grant of summary judgment *de novo*, we disagree and affirm.

## I. Background and Procedural History.

In 1974, Ashabranner (nee Eunice Jones) incorporated OKISDA to own and operate roughly 1,100 acres of farmland in Jefferson County, Arkansas. The Articles of Incorporation authorized OKISDA to issue 26,000 shares of Class A voting common stock and 26,000 shares of Class B non-voting common stock. At the June 1, 1974, organizational meeting, attended by incorporator Ashabranner and her attorney, the corporation resolved that Ashabranner would be the sole director; that Ashabranner would serve as President, Vice President, and Secretary-Treasurer; and that Ashabranner subscribed for the authorized 26,000 shares of Class A voting common stock and 26,000 shares of Class B non-voting common stock in exchange for her interest in the Jefferson County farmland. Later that year, Ashabranner transferred 4,333 shares of Class B non-voting stock to each of her six children. As of December 1974, Ashabranner owned 26,000 Class A shares and two Class B shares, and each child owned 4,333 Class B shares.

More than twenty-five years later, Ashabranner transferred her 26,000 Class A voting shares and two Class B non-voting shares to the Eunice K. Ashabranner Trust, a revocable trust drafted by an attorney in Conway, Arkansas. But by 2008, trustee Ashabranner was dissatisfied with the Trust's successor trustee provision and

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

consulted her accountant, Kirk Stone, and attorney Ted Drake, who had drafted a prior will in the 1980s and served as counsel to OKISDA. Drake testified that the Conway attorney "had done a revocable trust that wasn't at all what Miss Ashabranner wanted." It bothered Ashabranner that the Trust "favored Donna and made her trustee and gave her control over OKISDA." On February 1, 2011, Ashabranner signed a Second Restatement to the Trust drafted by Drake. Among other changes, the restated Trust appointed O.H. the primary successor Trustee, followed by Loden and Huddleston. Drake's notes from the meeting state: "Mrs. A was alone and obviously mentally competent. We went over trust and . . . order of trustees. She said that is what she has always wanted. O.H. knows the business. Other two girls know it next best."

In March 2012, Ashabranner met with Stone, expressed concern that her daughters might pressure O.H. to sell the farm, and said she wanted to give O.H. control of OKISDA. After confirming that Ashabranner understood the import of a decision to give up her sole control of the corporation, Stone emailed Ted Drake that "[Ashabranner] would like to gift O.H. all the voting stock. . . . She understands this gives O.H. control now. She is ok with O.H. having control. She does not want to worry about the daughters being able to s[ell] the farm without O.H.'s approval." Drake then orchestrated a series of actions to implement Ashabranner's decision.

On June 15, 2012, Ashabranner as sole voting shareholder elected herself, O.H., Huddleston, and Loden to OKISDA's Board of Directors. The next day, at a special meeting, the expanded Board elected new officers[2] and added a provision to the Bylaws allowing "Informal Action" without a meeting if a majority of the Board signed written consents describing the actions taken. The following month, the Board amended the Articles of Incorporation to authorize the issuance of 26,000 shares of

---

[2]The Board elected Ashabranner President, O.H. Vice-President and General Manager, Huddleston Secretary, and Loden Treasurer.

Class C non-voting stock "with distribution on liquidation of the corporation limited to [$1.00 per share] par value." By contrast, the Class A and Class B shares continued to have a par value of one dollar per share, but there was no limit to the per share distribution they would receive upon liquidation. At the same meeting, the Board authorized OKISDA to exchange 25,998 Class C shares for 25,998 Class A voting shares held by Ashabranner's revocable Trust. After this exchange, only two Class A voting shares remained outstanding, held by the Trust. On September 24, 2012, with Ashabranner as sole Trustee, the Trust transferred these two shares to O.H.

Rains, Laurendine, and Ballard received no notice of these 2012 transactions. On August 14, 2013, Ashabranner sent Rains, Laurendine, and Ballard a letter expressing "my disappointment in each of you" and declaring: "Nothing has been done behind anyone[']s back as I am the sole owner of OKISDA, Inc., to this point and will remain so until my death . . . ." Plaintiffs allege that, by August 16, two days later, they learned the Trust had transferred the only two outstanding voting shares to O.H. in September 2012. Ashabranner died on April 30, 2014.

In June 2015, attorney Gene Ludwig sent all six siblings a letter stating that he owned land adjacent to the OKISDA property and expressing interest in buying any of the siblings' interests in the land. Rains replied that she, Laurendine, and Ballard would be willing to sell. On April 15, 2016, Plaintiffs represented by Ludwig filed their initial complaint against O.H. and OKISDA. Plaintiffs alleged that the Trust's September 2012 transfer of two Class A shares violated the share transfer restriction in OKISDA's Bylaws. Plaintiffs sought specific enforcement of the restriction and also asserted damage claims against O.H. for unjust enrichment, conversion, breach of contract, and fraud committed by the share transfer and later actions. Defendants asserted various affirmative defenses including that claims were barred by the statute of limitations and the action should be dismissed for failure to join necessary parties.

-4-

Plaintiffs filed the First Amended Complaint on September 23, 2016, adding Loden, Huddleston, and Ballard as defendants. Plaintiffs alleged that O.H., Loden, and Huddleston breached their fiduciary duties as OKISDA directors by facilitating the September 2012 share transfer without notice to Plaintiffs; approving a loan from OKISDA to O.H. at a below-market interest rate; mismanaging leasing of OKISDA farmland; authorizing O.H. to drive a corporate truck; and having OKISDA indemnify them for the costs of defending Plaintiffs' suit. Plaintiffs sought a declaration that Loden and Huddleston had waived any claim to the two Class A shares and added Ballard as a necessary party defendant to assert any interest she had in those shares. Plaintiffs also sought a statutory right to inspect OKISDA's financial records[3] and expanded their fraud claim against O.H. to include an allegation that he made misleading disclosures to the federal government regarding his work farming the OKISDA land.

After months of discovery, all parties except Ballard moved for summary judgment. All sought summary judgment on Plaintiffs' claim that the September 2012 transfer violated the share transfer restriction in OKISDA's Bylaws. The district court granted the Defendants' motions for summary judgment. Central to its decision was the court's conclusion that Plaintiffs' breach of contract, breach of fiduciary duty, conversion, unjust enrichment, and fraud claims, and much of the relief sought, turned on the validity of the September 2012 transfer of Class A shares from the Trust to O.H. The court held that the share transfer did not violate the Bylaws' transfer restriction. The court also concluded that the unlawful share transfer claim, and all of Plaintiffs' tort claims that accrued before April 15, 2013, were time-barred because Plaintiffs presented no evidence showing that the applicable three-year statute of limitations should be tolled because of fraudulent concealment.

---

[3]The district court did not address this claim; Plaintiffs do not raise it on appeal. See generally Ark. Code Ann. § 4-26-715.

## II. Discussion.

The Statement of the Issues section of Plaintiffs' Opening Brief presents five issues on appeal. The fifth and last attacks the substantive core of the court's decision: "Whether the September 2012 transfer of the two Class A voting shares to Oscar 'O.H.' Jones violated the OKISDA Inc. Bylaws." Like the district court, we will begin (and for the most part end) with that issue.

**A. The Transfer Restriction Issue.** The share-transfer restriction at issue is Article VI, Section 3, of OKISDA's original 1974 Bylaws. It provides:

> (a) Before any shareholder in this corporation shall dispose of his or her shares of stock by an inter vivos transfer, whether by sale, gift or hypothecation, <u>such shareholder shall first offer said stock for sale to the corporation at a price to be determined as herein set forth.</u>
>
> (b) <u>Any share not purchased by the corporation</u> within sixty (60) days after receipt of such offer <u>shall be offered to the other shareholders of the class of stock being transferred</u>, each to have the right to purchase his or her aliquot part of the class to be transferred. <u>If the offer is not accepted</u> within thirty (30) days after receipt thereof, <u>the shareholder</u> desiring to transfer said stock <u>shall have the right to transfer that portion remaining to any other person but shall not transfer such shares without giving the corporation and remaining shareholders the right to purchase at a price and on the terms offered by such other person</u>.
>
> (c) The purchase price to be paid for the transfer of stock pursuant hereto shall be the book value of each share without consideration as to intangibles such as good will . . . .

(Emphasis added.) Defendants took no action pursuant to Section 3 before or after the September 2012 transfer of two Class A voting shares from the Trust to O.H. Plaintiffs do not claim the transfer violated subsection 3(a) because the shares were not first offered to OKISDA, as purchase by OKISDA would have left no voting

-6-

shares outstanding. Nor do they claim a violation of the first sentence of subsection 3(b) for the obvious reason that there were then no "other shareholders of the class of stock being transferred" who would have a right to purchase the two shares.

Thus, the dispute turns on the second sentence of subsection 3(b), more specifically, on whether Plaintiffs Rains and Laurendine, as holders of Class B non-voting shares, are "remaining shareholders [who had] the right to purchase at a price and on the terms offered by such other person," the transferee O.H. Plaintiffs argued the plain language of this sentence required the Trust, before it gifted the two shares to O.H., to offer all Class B shareholders the right to acquire those shares on the same terms, namely, by gift. The district court concluded:

> Plaintiffs' interpretation of the transfer restriction bylaw is unreasonable. Under Plaintiffs' interpretation, the transfer-restriction bylaw gave Plaintiffs (who each held a little more than 8% of all outstanding shares, were not on the board of directors, and held no voting shares) veto power over the decision of a supermajority of all shareholders, the holder of all voting shares, and the corporation's board of directors.
>
> * * * * *
>
> Essentially, this bylaw gave shareholders of the same class of stock being transferred a right of first refusal before shares were sold to an outsider -- or, in the transfer-restriction bylaw's terms, "any other person." Because [O.H.] Jones was a shareholder, he was not "any other person."
>
> The transfer-restriction bylaw has four steps. . . . [Plaintiffs'] nonsensical interpretation is avoided when the terms "remaining shareholders" and "other shareholders <u>of the class of stock being transferred</u>" are read as interchangeable.

Reading other shareholders and remaining shareholders as synonymous, allows the only reasonable interpretation of the bylaw.

On appeal, Plaintiffs argue their interpretation of subsection 3(b) is mandated by the plain meaning of the terms "any other person" and "remaining shareholders," supported by evidence that Ashabranner always intended that each of her children retain an equal interest in OKISDA. Like the district court, we disagree.

Arkansas courts, like the courts of other States, apply contract-interpretation principles in interpreting corporate bylaws. See Taylor v. Hinkle, 200 S.W.3d 387, 395-96 (Ark. 2004); see generally 8 Fletcher, Cyclopedia of the Law of Corporations § 4195 (2018). Like other contracts, when interpreting a contract among shareholders restricting their freedom to transfer, "the rule is to ascertain the intention of the parties and to give effect to that intention where this can be done consistently with legal principles." Owen v. Merts, 405 S.W.2d 273, 277 (Ark. 1966). Here, there were not multiple "parties to a contract." OKISDA was formed and its Bylaws adopted by the sole owner of the corporation's assets, Ashabranner. Under her exclusive control, the corporation created two classes of stock, voting and non-voting, and issued all authorized shares to Ashabranner, its sole stockholder and director, who then retained all Class A voting shares and gifted all but two Class B non-voting shares in equal portions to her six children.

Because the only intention to be determined is the intent of Ashabranner in including Article VI, Section 3, in OKISDA's 1974 Bylaws, it is not surprising that neither Plaintiffs nor any Defendant argued to the district court that summary judgment was improper because extrinsic evidence was needed to interpret an ambiguous Bylaw. Rather, the two sides urged the court to adopt very different interpretations of the second sentence of subsection 3(b). In these circumstances, the role of the court is to determine, as a matter of law, the "more reasonable construction" of Ashabranner's intent. Fryer v. Boyett, 978 S.W.2d 304, 306 (Ark.

App. 1998). This intent "is to be gathered, not from particular words and phrases, but from the whole context of the agreement." Owen, 405 S.W.2d at 277 (citation omitted); see Spann v. Lovett & Co., 389 S.W.3d 77, 88-89 (Ark. App. 2012).

1.    Beginning with Plaintiffs' textual argument, we disagree that, in this context, the plain meaning of "any other person" necessarily includes O.H. Restraints on alienation are generally disfavored.  Thus, courts have interpreted similarly worded restrictions -- preventing an existing shareholder from disposing of his or her shares before offering them to the corporation or other shareholders -- as applying only to transfers between current shareholders and outsiders.  See, e.g., Birmingham Artificial Limb Co. v. Allen, 194 So. 2d 848, 850 (Ala. 1967).  Moreover, the second sentence of subsection 3(b) gives remaining shareholders "the right to *purchase* at a price and on the terms offered by such other person."  Here, there was no offer to purchase by O.H.; the Trust transferred two Class A shares to O.H. *by gift*.  As the district court noted, it would be "nonsensical" to apply the four steps of Article VI, Section 3, literally to this transfer.

We also disagree that the plain meaning of "remaining shareholders" in this context necessarily includes the holders of Class B non-voting shares.  The word "remainder" is defined as "the number left after subtraction or deduction."  Webster's Third New International Dictionary 1919 (1986).  Here, Section 3 was obviously intended to apply if one or more of Ashabranner's six children wished to sell his or her Class B non-voting shares.  In this situation, a reasonable interpretation of the *second* sentence of subsection 3(b) is that "remaining shareholders" are those Class B shareholders who did not elect to purchase "his or her aliquot part" under the first sentence of subsection 3(b).

2. Turning to the other important inquiry in determining Ashabranner's intent, we disagree with Plaintiffs' assertion that the summary judgment record established that she intended that each of her children "retain an equal interest in OKISDA."

Rather, the evidence established that, in 1974 and thereafter, Ashabranner intended to establish and to retain sole *control* over the corporation, while transferring to her children equal *financial* interests in the corporation's assets (a typical parental objective in dealing with a family enterprise). This intent was reflected in the 2012 transactions that attorney Drake orchestrated. By exchanging all but two of her Class A voting shares for newly-authorized Class C non-voting shares having a limited value upon liquidation, Ashabranner reduced her financial interest in OKISDA in the event of her death. By then gifting the remaining two outstanding shares of Class A voting stock to O.H., she was able to transfer her sole control in a manner that did not substantially affect the siblings' equal financial interests in OKISDA's assets.

For these reasons, we conclude the district court correctly ruled that, because "other shareholders of the same class" and "remaining shareholders" should be interpreted as synonymous, and because O.H. was not "any other person," the Trust did not violate Article VI, Section 3, of OKISDA's Bylaws when it did not offer two Class A voting shares to the Class B non-voting shareholders before transferring the two shares to O.H Jones.

**B. Plaintiffs' Other Contentions on Appeal.** Plaintiffs argue the district court erred in dismissing other claims without providing Plaintiffs advance notice and an opportunity to respond. Rule 56(f) provides that the court may grant summary judgment on grounds not raised or on its own "[a]fter giving notice and a reasonable time to respond." Even without notice, however, summary judgment may be granted "on an issue not properly raised in the summary judgment motion if the district court's findings on properly addressed issues foreclose the unraised issue." Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003), citing Interco Inc. v. Nat'l Sur. Corp., 900 F.2d 1264, 1269 (8th Cir. 1990). Here, the district court concluded:

> Because this [two-share] transfer was valid, Defendants breached
> no bylaws, contract, or fiduciary duties; no property was converted; no

one was unjustly enriched; and no fraud took place. Accordingly, Defendants are entitled to summary judgment on these points.

The issues raised by Plaintiffs on appeal do not include the merits of the district court's rulings dismissing their claims for unjust enrichment and breach of fiduciary duty, only the court's decision to grant summary judgment *sua sponte* without providing Plaintiffs notice or an opportunity to respond. But this procedural contention was waived. "Whether or not a party receives an advance signal that the court might act *sua sponte* . . . any objection to that procedure is waived if the party does not at least object *after* the court enters its order while the action is still pending." UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co., 870 F.3d 856, 866-67 (8th Cir. 2017).

Although the only issue raised on appeal was waived in the district court, we agree with the court that the validity of the stock transfer established that Plaintiffs' other claims are foreclosed.

1. Count Two alleged that O.H. was unjustly enriched by receipt of the two Class A shares. That claim was directly foreclosed by the transfer's validity. See Davis v. Davis, 480 S.W.3d 878, 885 (Ark. App. 2016) ("One is not unjustly enriched by receipt of that to which he is legally entitled."). Plaintiffs also alleged that O.H. was unjustly enriched after the September 2012 share transfer by being allowed to drive a corporate truck, receiving loans from OKISDA he has not repaid, and engaging in self dealing. But these are claims that O.H. injured the corporation by abusing control lawfully acquired by the share transfer. "Any action to recover for the alleged losses was derivative in nature and an individual suit was not the proper route for relief." Hames v. Cravens, 966 S.W.2d 244, 247 (Ark. 1998).

2. Count Six alleged that O.H., Loden, and Huddleston breached fiduciary duties by facilitating the invalid share transfer. This claim was directly foreclosed by

-11-

the transfer's validity. "A person standing in a fiduciary relationship with another is subject to liability to the other for *harm resulting from a breach of the duty imposed by the relationship.*" Long v. Lampton, 922 S.W.2d 692, 696-97 (Ark. 1996) (emphasis added). Plaintiffs also alleged that O.H., Loden, and Huddleston, as officers and directors of OKISDA, breached their fiduciary duty to Plaintiffs as shareholders after the share transfer by their actions in controlling the corporation -- a below-market loan to O.H., misuse of retained earnings, self-dealing and imprudent leasing practices, and O.H.'s use of the corporate truck, all without notice to Plaintiffs. As explained, these are claims of injury to the corporation that may only be asserted in a shareholder derivative action. See Hames, 966 S.W.2d at 246-47; Walker v. Hyde, 798 S.W.2d 435, 437 (Ark. 1990). Thus, even if fact intensive, the claims were properly dismissed. The claim that the director Defendants breached a fiduciary duty to hold annual OKISDA shareholder meetings in 2013, 2014, and after 2015 obviously fails for lack of injury, as Plaintiffs were not entitled to notice of or the right to vote at these meetings.[4]

3. Finally, Plaintiffs argue the district court erred in concluding (i) that their share transfer tort claim is time-barred without considering their allegation that O.H.'s fraudulent concealment tolled the three-year statute of limitations; and (ii) that unjust enrichment and breach of fiduciary duty claims accruing before April 15, 2013, are time-barred despite Plaintiffs' allegations of fraudulent concealment and of continuing wrongful acts after the two-share transfer. As we have concluded that the district court correctly dismissed these claims on the merits, we need not consider Plaintiffs' appeal of the court's alternative statute of limitations rulings.

For the foregoing reasons, the judgment of the district court is affirmed.

_____

_____

[4]The OKISDA Articles of Incorporation expressly provided that only shareholders entitled to vote were entitled to notice of shareholder meetings.