GOLDEN TEE, INC. *v.* VENTURE GOLF SCHOOLS,
INC., and Cooper Communities, Inc.

97-878                                    969 S.W.2d 625

Supreme Court of Arkansas
Opinion delivered May 14, 1998
[Petition for rehearing denied June 11, 1998.]

*Timothy O. Dudley*; *Arnold, Grobmyer & Haley*, by: *Lee Thalheimer*; and *Gary Lax*, for appellant.

*Rose Law Firm*, by: *David C. Williams* and *Grant E. Fortson*, for appellees.

RAY THORNTON, Justice. Appellant Golden Tee, Inc. (Golden Tee), a limited partner in Hot Springs Village Golf School Limited Partnership (Golf Partnership), filed this action for fraud, breach of contract, and breach of fiduciary duty against another limited partner, Cooper Communities, Inc. (Cooper), and against the general partner, Venture Golf Schools, Inc. (Venture). The action was filed as an individual action directed against appellees Venture and Cooper, and was not brought as a derivative action asserting rights on behalf of the Golf Partnership for recovery of alleged damages to the Golf Partnership. The trial court found that Golden Tee could not present proof to show a genuine dispute of material fact required to support essential elements of its claims for fraud, and that Golden Tee lacked standing to bring an action for injuries to the Golf Partnership except as a derivative action, and granted appellees' motion for summary judgment. Golden Tee appeals, asserting that the trial court erred because issues of material fact remained. We find no error and affirm.

Mr. Roger C. Kluska, who later became President of Golden Tee, was a golf professional who began a dialogue with Mr. Randy Brucker, his next-door neighbor, in early 1992 about the development of a golf school in Hot Springs Village. Mr. Kluska submitted a design for a three-hole golf school, driving range, putting green, clubhouse, and other facilities to Mr. Brucker, who later became President of Venture. Mr. Brucker was a representative of Cooper, and in May, Mr. Kluska was invited to Bella Vista to show his plans for a golf school to the corporate management of Cooper. In late September, Cooper expressed an interest in the project and indicated that if Mr. Kluska would come up with $200,000, for a 25% share in the project, Cooper would put up $800,000 for a 75% share. Mr. Kluska persuaded three other golf professionals to join with him, and in November, informed Cooper that they were ready to go forward with the project. The four golf professionals formed Golden Tee. Venture was also incorporated, and Cooper joined in the formation of the limited Golf Partnership on November 19. In addition to the general partner, Venture, and Golden Tee and Cooper as limited partners, the agreement forming the limited Golf Partnership was signed by

the four golf professionals who owned all the shares of stock in Golden Tee.

The Golf Partnership was formed pursuant to the Arkansas Revised Limited Partnership Act of 1991, Ark. Code Ann. §§ 4-43-101 to -1206, and specifically provided that all the parties to the agreement consented and agreed to employment agreements between the general partner, Venture, and the four golf professionals; as well as to the leasing and use of Cooper's property for the Golf Partnership's business. It was further provided that upon the termination and dissolution of the Golf Partnership, properties leased from Cooper and all leasehold improvements should revert to Cooper. All parties agreed that in the event there should be a negative cash flow produced from operations of Golf Partnership exceeding a cumulative loss of $200,000, Venture had authority to terminate and dissolve the Golf Partnership. The golf school opened for business in the summer of 1993.

Cooper had planned for the contingency that the project might fail by developing an exit strategy involving the donation of the improvements to the Hot Springs Village Property Owners' Association (POA), and it did not disclose this plan to Golden Tee. Cooper had also prepared some *pro forma* projections of operations over a ten-year period, with estimates of a monthly management fee of $400 and the depreciation of improvements at $10,000 per year. Mr. Kluska had seen these *pro forma* projections at about the time the Golf Partnership was formed.

By October of 1994, the Golf Partnership had sustained a negative cash flow of more than $500,000, and even if the management fees that were charged by Cooper and objected to by Golden Tee are entirely eliminated as an expense, the negative cash flow was $438,582. Mr. Kluska stated that he knew that the Golf Partnership had experienced a negative cash flow in excess of $200,000. Based upon the provisions of the agreement, Venture terminated and dissolved the partnership, and the school closed in November 1994. The real estate and improvements reverted to Cooper, who donated the property, together with other property to the POA for development as a golf course.

After the school closed, Cooper charged the Golf Partnership the present value of future lease payments left on the lease agreement with the Golf Partnership. The total amount due was $376,000, with $94,000 of the liability charged to Golden Tee. This reduced the amount left in Golden Tee's capital account to $587.

■ Our standard for reviewing a grant of summary judgment is well settled. The remedy of summary judgment should only be granted if there exists no genuine issue of material fact and the party moving for summary judgment is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Smothers v. Clouette*, 326 Ark. 1017, 1020, 934 S.W.2d 923, 925 (1996). We view the issue in the light most favorable to the party opposing the judgment, and the court resolves all inferences and doubts against the moving party. *Id.* If the party moving for summary judgment makes a prima facie showing that no issues of fact exist, and the non-moving party fails to show that such issues do exist, then the court must affirm the trial court's grant of a summary judgment. *Pyle v. Robertson*, 313 Ark. 692, 694, 858 S.W.2d 662, 663 (1993).

■ The response and supporting material must set forth specific facts showing that there is a genuine issue of fact for trial. *Norris v. Bakker*, 320 Ark. 629, 632, 899 S.W.2d 70, 71 (1995). Our rules of civil procedure clearly provide that the trial court may only consider "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any" for purposes of summary judgment. Ark. R. Civ. P. 56(c).

### Standing

Our analysis begins with the issue whether the party who is seeking damages has standing. If we conclude that Golden Tee has standing, then we must decide whether Golden Tee has alleged facts upon which relief can be granted.

■ The Arkansas General Assembly has recognized that a derivative suit may be instituted by a limited partner in certain circumstances. *See* Ark. Code Ann. § 4-43-1001 (Repl. 1996). Recognizing this possibility, we must distinguish between causes of action that accrue to the Golf Partnership and those that accrue

to one or more of the limited partners as individuals. *See* Edwin W. Hecker, Jr., *Limited Partners' Derivative Suits Under the Revised Uniform Partnership Act*, 33 VANDERBILT L. REV. 343, 355 (1980). The "prevailing criterion is whether the claimed injury is primarily to the partnership and only indirectly to the partners through their interest in the partnership — a partnership claim — or is direct and unique to the partner(s) — an individual claim." 4 *Alan R. Bromberg and Larry E. Ribstein on Partnership* § 15.04(f), at 15:31 (1997). Similarly, other courts have stated that "for a plaintiff to bring an individual action, he must be injured directly or independently of the corporation." *Lenz v. Associated Inns & Restaurants Co. of America*, 833 F. Supp. 362, 380 (S.D.N.Y. 1993) (quoting *Kramer v. Western Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. Supr. 1988)). Looking to the federal court for guidance, when the individual limited-partner alleges wrongs to the Golf Partnership that indirectly damage him by "rendering his contribution or interest in the limited partnership valueless, the limited partner is required to bring his claim derivatively on behalf of the partnership." *Kenworthy v. Hargrove*, 855 F.Supp. 101, 106 (E.D. Pa. 1994), *aff'd*, 27 F.3d 557 (3d Cir. 1994).

■ This is consistent with our corporate law regarding derivative suits. In ascertaining whether a cause of action is derivative, it is appropriate to look to corporate law for guidance. *See Alpert v. Haimes*, 315 N.Y.S.2d 332 (Sup. Ct., Sp. Div. 1970). In the corporate context, we have stated:

> The real distinction between a derivative and an individual action is whether it is the corporation that has been injured by the action complained of or whether it is only the individual shareholder who has suffered harm. The primary purpose of the derivative action is to allow one or more shareholders to bring a suit on behalf of the corporation. If the alleged wrong is one primarily against the corporation, the action should be brought in a derivative capacity . . . .

*Brandon v. Brandon Constr. Co.*, 300 Ark. 44, 48, 776 S.W.2d 349, 352 (1989).

■ Similarly, we recently determined that individual stockholders had no standing to sue in their individual capacities for injuries allegedly suffered primarily by the corporation and its

shareholders in *Hames v. Cravens*, 332 Ark. 437, 441, 966 S.W.2d 244 (1998). We noted that our decision did not imply that shareholders may never bring a direct suit. *Id.* at 442. However, direct suits are appropriate only where a shareholder asserts "a direct injury to the shareholder distinct and separate from harm caused to the corporation." *Id.*

With these guiding principles in mind, we examine each of Golden Tee's claims to determine whether, based on the nature of the wrong, the injury is primarily to the Golf Partnership, and only indirectly to the partners, or whether it is direct and unique to the partners.

## A. Breach of Contract

Golden Tee argues on appeal that the trial court erred in granting summary judgment on two of its breach-of-contract claims: (1) that appellees breached the partnership agreement by disposing of Golf Partnership property without Golden Tee's consent, and (2) that Cooper breached the partnership agreement by managing and controlling the affairs of the Golf Partnership. We have determined that the trial court did not err, and we affirm.

■ Actions for breach of the partnership agreement may be brought as individual actions or partnership actions, depending on which entity or party is primarily injured. *See* 4 *Bromberg & Ribstein,* § 15.04(h), at 15:37. Analogizing to corporate law, if the injuries alleged were those for which relief should have been granted to the Golf Partnership, and not to an individual partner, then derivative action should be the appropriate route for relief. *See Walker v. Hyde*, 303 Ark. 615, 798 S.W.2d 435 (1990) (reviewing the propriety of a derivative claim in a shareholder setting).

The injuries that Golden Tee asserted under its breach-of-contract claims were loss of its initial investment, loss of future profits, and diminishment of the capital account. The first injury alleged, loss of Golden Tee's initial investment capital, is an injury inflicted on the Golf Partnership. Looking again to the corporate setting for guidance, a federal court has stated:

> where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation.

*Lenz*, 833 F. Supp. at 381. The *Lenz* court applied this reasoning to limited partnerships, stating that a limited partner has no greater right to vindicate an injury to the limited partnership for the loss or diminution of the value of his interest than a stockholder in a corporation has. *Id.* Similarly, the loss of capital, which Golden Tee claims here, involves a primary injury to the Golf Partnership rather than to the individual limited partners.

By their express terms, the latter two claims seek redress of injuries inflicted directly on the Golf Partnership by any breach of the agreement. Although Golden Tee, as a limited partner, undoubtedly suffered injuries, they were indirect damages by way of injury to the Golf Partnership, not only to the individual partners. As such, the injury suffered was derivative, and the claims for breach of contract should have been brought in a derivative action. *See, e.g., Oncology Associates v. McGraw-Hill Corp.*, 109 A.D.2d 616, 486 N.Y.S.2d 181 (Sup. Ct. App. Div. 1985).

Golden Tee asserts that the trial court erred in granting summary judgment on the basis that the claim that appellees disposed of Golf Partnership property without Golden Tee's consent should have been brought in a derivative action. Golden Tee makes this same argument regarding the alleged breach of fiduciary duty as its first claim under part B below; therefore, we address them concurrently under part B.

Golden Tee's other claim of breach of contract was based on the allegation that Cooper breached the partnership agreement by managing and controlling the affairs of the Golf Partnership. The trial court granted summary judgment on the ground that Golden Tee failed to present proof that they were damaged by Cooper's management and control.

The CEO of Cooper, Roger McMennemy, testified that he made the decision to close the golf school and terminate the Golf

Partnership. Golden Tee alleges that this breached the partnership agreement because only Venture had the authority to terminate the Golf Partnership when the negative cash flow exceeded $200,000. However, Randy Brucker, president of Venture, testified that he and Mr. McMennemy made the decision to close the golf school. Further, Michael Dial, vice-president and treasurer of Venture, testified that the Golf Partnership had begun experiencing a negative cash flow in excess of $200,000 in September 1993, and that "the decision was made to terminate the Golf Partnership pursuant to paragraph 5.3 and Article XI of the Partnership Agreement" in October 1994, after the Golf Partnership had experienced a negative cash flow of over $523,282.

In light of the evidence showing that the negative cash flow was increasing over time, Golden Tee does not prove how it was individually injured by the decision to terminate operations in accordance with the partnership agreement, which all parties had approved. The decision to terminate the partnership was one that primarily affected the Golf Partnership, with only derivative effect on the limited partners.

Golden Tee also asserts that Cooper controlled the winding up of affairs and disposing of Golf Partnership assets in derogation of the partnership agreement. This claim is likewise for alleged injuries to the Golf Partnership rather than to the individual limited partners. Golden Tee asserts that Cooper's actions reduced the amount of capital that should have been returned to it; however, an action for diminution of capital in the Golf Partnership account should be a derivative cause of action to recover the loss for the benefit of the Golf Partnership. *See Lenz*, 833 F. Supp. at 381.

We conclude that the allegations for breach of the partnership agreement complain directly of injuries to the Golf Partnership, and Golden Tee was injured only to the extent of its proportionate interest therein. We affirm the trial court's grant of summary judgment on this point because Golden Tee should have asserted these claims in a derivative suit.

## B. Breach of Fiduciary Duty

Golden Tee alleges that the trial court erred in granting summary judgment on the basis that its breach-of-fiduciary-duty claims were partnership rather than individual claims. Golden Tee argues that the following actions constituted a breach of appellees' fiduciary duty: (1) negotiating with the POA to construct a golf course that might incorporate the facilities owned by the Golf Partnership for use in constructing a new golf course without the knowledge and consent of Golden Tee, (2) failing to account for value received by appellees after dissolution of the Golf Partnership, (3) charging the Golf Partnership for payments due in the future under the land-lease agreement between the Golf Partnership and Cooper because it reduced Golden Tee's capital account, (4) charging management fees to the Golf Partnership far in excess of the actual value of services rendered by Cooper to the Golf Partnership; and (5) failing to fully disclose all material facts to Golden Tee. The trial court granted summary judgment based on its belief that these were claims that belonged to the Golf Partnership, and must therefore be brought in a derivative action. We agree.

A general partner owes a fiduciary duty to the limited partners. *St. Joseph's Regional Health Center v. Munos*, 326 Ark. 605, 615, 934 S.W.2d 192, 197 (1996); *see also* Ark. Code Ann. § 4-42-404(1) (Repl. 1996). The critical question before us is "whether the fiduciary duty owed by the general partner is owed to each limited partner or to the limited partnership or both." *Phillips v. Kula 200 II*, 667 P.2d 261, 265 (Haw. App. 1983). An individual or a derivative claim may be required, "depending on whether the duty is deemed owed to the partners (as individuals) or to the partnership." 4 *Bromberg & Ribstein*, § 15.04(h), at 15:35-36.

Golden Tee argues that nothing in Arkansas's version of the Revised Limited Partnership Act, Ark. Code Ann. §§ 4-43-101 to -1206 (Repl. 1996 & Supp. 1997), requires that this suit must have been instituted as a derivative suit. *But cf. Hooper v. Ragar*, 289 Ark. 152, 711 S.W.2d 148 (1986) (allowing limited partners to bring a derivative claim in circuit court against general part-

ners). However, while Golden Tee asserts that partners owe one another a fiduciary duty, it does not tell us how the limited partners have sustained separate or individual injuries, independent of the Golf Partnership, as a result of the purported breach. Golden Tee alleges damages in its complaint that were caused by the breach of contract, but does not allege separate damages as a result of the breach of fiduciary duty.

■ We look to our statutes for guidance on the issue of to whom the fiduciary duty is owed. Arkansas's Revised Limited Partnership Act provides that:

> [A] general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners.

Ark. Code Ann. § 4-43-403(a). Arkansas's Uniform Partnership Act provides that a partner is accountable as a fiduciary as follows:

> Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

Ark. Code Ann. § 4-42-404(1) (Repl. 1996). A breach of this fiduciary obligation entitles the injured partner to an accounting. Ark. Code Ann. § 4-42-405 (Repl. 1996).

■ In this case, the general partners clearly owed a fiduciary duty to the Golf Partnership. However, we have determined that the injuries that Golden Tee alleges were injuries to the Golf Partnership, and, as such, must be brought in a derivative action for damages to the Golf Partnership.

## C. Fraud

Golden Tee also alleges that the trial court erred in granting summary judgment on its three fraud claims. For reversal, Golden Tee alleges: (1) that Cooper and Venture fraudulently induced Golden Tee to enter into the partnership agreement by representing that it would charge the Golf Partnership only $400 a month in management fees, and would depreciate the equipment and the

property at \$10,000 a year; (2) that Cooper and Venture committed fraud in failing to divulge their plans to donate the property on which the golf school was built to the POA; (3) that the appellees fraudulently charged the Golf Partnership the present value of future lease payments after the land had been donated to the POA and when no future payments were due. In its complaint, Golden Tee asserted that its damages were losses of its investment and future profits.

The tort of fraud consists of five elements that the plaintiff must prove by a preponderance of the evidence: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Medlock v. Burden*, 321 Ark. 269, 273, 900 S.W.2d 552, 555 (1995). Further, if a respondent to a motion for summary judgment cannot present proof on an essential element of the claim, the movant is entitled to summary judgment as a matter of law. *O'Mara v. Dykema*, 328 Ark. 310, 316, 942 S.W.2d 854, 857 (1997).

Fraud is a cause of action that may be brought individually or as a derivative suit, depending on the allegations. If the plaintiff alleges fraud in the inducement to enter into the partnership agreement, the claim is generally individual in nature. 4 *Bromberg & Ribstein*, § 15.04(f), at 15:32. If, however, the plaintiff alleges fraudulent actions that primarily harm the partnership, then the action must be plead as a derivative suit.

As its first contention of fraud on appeal, Golden Tee alleges that appellees induced it to enter into the partnership agreement by fraudulently misrepresenting Cooper's management and depreciation projections. Because Golden Tee alleges fraud in the inducement, this claim for fraud may be plead individually. We therefore examine whether Golden Tee has proven the elements of fraud to exist.

The trial court found that the *pro formas* at issue could not sustain a fraud charge because they were projections of future

operating expenses. Golden Tee asserts that the *pro formas* were sufficient to constitute a basis for fraud because appellees either knew that the projections were false or else not knowing asserted them to be true, particularly since the untrue projections were within appellees' control.

■ ■ We have often declared that projections of future events or a promise of future conduct may not form the basis of a fraud claim. *See, e.g., South County, Inc. v. First Western Loan Co.,* 315 Ark. 722, 727, 871 S.W.2d 325, 327 (1994). We have stated:

> In the context of negotiating a contract, a misrepresentation sufficient to form the basis of a deceit action may be made by one prospective party to another and must relate to a past event, or a present circumstance, but not a future event. An assertion limited to a future event may be a promise that imposes liability for breach of contract or a mere prediction that does not, but it is not a misrepresentation of that event.

*Id.* at 727-28, 871 S.W.2d at 327 (quoting *P.A.M. Transport, Inc. v. Arkansas Blue Cross & Blue Shield,* 315 Ark. 234, 240, 868 S.W.2d 33, 36 (1993). A *pro forma* statement is defined as a "financial statement showing the forecast (or projected) operating results or impact of a particular transaction." *Black's Law Dictionary* 842 (Abr. 6th ed. 1991).

■ The *pro formas* at issue before us are clearly projections of future operating expenses, which cannot sustain a fraud charge. Golden Tee did not meet its burden of proving that appellees made any misrepresentations that would give rise to a cause of action for fraud, and we cannot say that the trial court erred in granting summary judgment on this claim.

■ In its second and third fraud claims, Golden Tee argues that the trial court erred in granting summary judgment because appellees committed fraud by charging future lease payments against the Golf Partnership after they knew the land had been donated to the POA for the purpose of reducing any return of capital due to Golden Tee, and by failing to divulge their plans to donate the property on which the golf school was built to the POA. However, under our criteria set forth above, the claimed injury here is primarily against the Golf Partnership, rather than

against the individual limited partners. As such, Golden Tee should have pursued this cause of action in a derivative suit.

No question of fact remains to be resolved, and we affirm the trial court's decision granting summary judgment on all fraud claims.

### Conclusion

Although Golden Tee argues that it had the option of bringing its causes of action as either individual or derivative claims under our statutory language, we disagree. Our statute provides that:

> A limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.

Ark. Code Ann. § 4-43-1001 (Repl. 1996). We agree with the analysis of the New York court in *Alpert v. Haimes,* where the court reasoned that the purpose of their statute was not to allow a choice between bringing an individual action or a derivative one, but was to give the plaintiffs the right to bring a suit in a derivative capacity that had been unavailable prior to the statute's adoption. *Alpert v. Haimes,* 315 N.Y.S.2d at 335. The court stated that "to hold otherwise would undermine the intent of the Legislature in providing safeguards to both limited partners and general partners in derivative suits." *Id.*

We note that procedural requirements for derivative suits differ from those required in individual or class actions. *See* Hecker, 33 VANDERBILT L. REV. at 355. Also, the interests of the individual limited partners may not be the same as the interests of the partnership entity. *R.S. Ellsworth v. Amfac Financial Corp.,* 65 Haw. 345, 351, 652 P.2d 1114, 1118 (1982). If we allow less than all limited partners to sue to enforce rights belonging to the partnership, we would be exposing the general partners to future liability for the same claims. *Id.* Also, the monetary damages in a derivative suit belong to the partnership to be distributed to the

limited partners, instead of belonging to those individual partners who bring the suit. *Id.*

We conclude that all of the claims, with the exception of the claim alleging fraud in inducing the limited partners to sign the limited-partnership agreement, should have been brought in a derivative action and that the trial court's finding that Golden Tee did not prove essential elements of its claim of fraud was not erroneous. Accordingly, we affirm the trial court's grant of summary judgment.

Affirmed.