

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2005

# USA v. Acorn Tech Fund

Precedential or Non-Precedential: Precedential

Docket No. 04-3663

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Acorn Tech Fund" (2005). *2005 Decisions.* Paper 185.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/185

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3663

———

UNITED STATES OF AMERICA

v.

ACORN TECHNOLOGY FUND, L.P.

LEONARD BARRACK and LYNNE BARRACK

Appellants

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-00070)
District Judge: Honorable James T. Giles

———

Argued October 18, 2005

Before: VAN ANTWERPEN, ALDISERT and COWEN, Circuit
Judges.

(Filed: November 8, 2005)

Paul G. Shapiro (Argued)
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Patrick K. McCoyd
Tracey R. Seraydarian
Post & Schell, P.C.
1600 John F. Kennedy Boulevard
Four Penn Center
Philadelphia, PA 19103

*Counsel for the Government, on behalf of the Small Business Administration*

Eric Kraeutler (Argued)
G. Jeffrey Boujoukos
Catharine E. Gillespie
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

*Counsel for Movants-Appellants Leonard and Lynne Barrack*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Before us is an interlocutory appeal from an order denying Appellants' motion to lift a stay of litigation which was entered pursuant to a receivership order. Appellants Leonard and Lynne Barrack ("the Barracks") are attempting to bring claims against Acorn Technology Fund, L.P. ("Acorn"), Acorn Technology Partners, L.L.C. ("Acorn Partners"), and the Small Business Administration ("SBA"). The claims allege that the Barracks were fraudulently induced to invest in Acorn, and subsequently lost money, due to mismanagement and lack of disclosure. The United States District Court for the Eastern District of Pennsylvania denied the Barracks' motion to lift the receivership stay after determining that all their possible claims failed as a matter of law. We will affirm the District Court's refusal to lift the stay, and in so doing,

2

we will adopt the standard of <u>SEC v. Wencke</u>, 742 F.2d 1230 (9th Cir. 1984).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Acorn Technology Fund, L.P. was formed in New Jersey in 1999 as a Small Business Investment Company ("SBIC") under section 301(c) of the Small Business Investment Act ("SBIA") of 1958, 15 U.S.C. § 681(c), which is administered by the SBA. Acorn's general partner was Acorn Technology Partners, L.L.C., a New Jersey company run by John Torkelsen. In early 1998, Torkelsen convinced the Barracks to invest in Acorn beginning with a $1,000,000 Subscription Agreement ("Subscription 1") executed on April 7, 1998. As part of the solicitation, on March 24, 1998, Torkelsen sent a letter to the Barracks indicating that he was willing to do two things to "make it easier for you to subscribe": 1) allow them to pay only $250,000 upon signing a Subscription Agreement, followed by $250,000 annually over the next three years; and 2) waive any penalties which would be imposed by the SBA if the Barracks failed to fully pay the balance on their Subscription Agreement. The Barracks returned a signed Subscription Agreement on April 9, 1998, along with a check for $250,000 and a letter reciting that "You [Acorn Partners] have agreed that if I choose to discontinue investing I will maintain my existing position without penalty." The Barracks also signed a Limited Partnership Agreement, section 3.4.2 of which permitted the general partner, *with the consent of the SBA*, to reduce a defaulting limited partner's partnership share to the amount of capital actually contributed.

The Barracks timely paid the first two installments of Subscription 1, bringing their paid capital investment to $750,000. On September 15, 2000, they signed a second Subscription Agreement ("Subscription 2") and promised an additional $500,000. In 2001, though, the Barracks decided to exercise their right–allegedly granted in the waiver letter–to discontinue investing without penalty, and froze their total investment at $750,000.

3

In a matter initially unrelated to the Barracks, the United States brought suit in the United States District Court for the Eastern District of Pennsylvania on January 6, 2003, against Torkelsen, his wife and son, and his business associate, under the Mail Fraud Injunction Act, 18 U.S.C. § 1345, et seq. United States v. Torkelson et al., No. 03-CV-0060 (E.D. Pa. Jan. 6, 2003). The suit alleges that the Torkelsens used Acorn to obtain $32 million in federal funds from the SBA, then invested the money in companies they controlled and ultimately diverted it into their own accounts. On January 7, 2003, the United States filed the instant suit to have Acorn placed in receivership based on violations of the SBIA. The District Court appointed the SBA receiver on January 17, 2003, as authorized by 15 U.S.C. § 687c. As part of the receivership order, the District Court imposed a stay on all civil litigation "involving Acorn, the Receiver, or any of Acorn's past or present officers, directors, managers, agents or general or limited partners," unless specifically permitted by the court. Order for Operating Receivership, United States v. Acorn Technology Fund, L.P., No. 03-cv-0070 (E.D. Pa. Jan. 17, 2003) ("Receivership Order").

The SBA, acting as receiver, filed suit against the Barracks to force them to pay the $750,000 still outstanding on the two Subscription Agreements. United States Small Bus. Admin., as Receiver for Acorn Tech. Fund, L.P. v. Barrack, No. 03-cv-5992 (E.D. Pa. Oct. 29, 2003). The Barracks responded by filing a motion with the receivership court which sought to have the stay of litigation lifted, for the purpose of asserting, in the SBA's suit, counterclaims against the SBA, Acorn, and Acorn Partners. On August 12, 2004, the District Court denied the Barracks' motion in full and refused to lift the stay of litigation. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over the receivership action pursuant to section 308 of the SBIA, 15 U.S.C. § 687(d); section 311 of the SBIA, 15 U.S.C. § 687c(a); and section 2(5)(b) of the Small Business Act, 15 U.S.C. § 634(b)(1). This Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1). We review de novo the District Court's application of law in receivership proceedings. SEC v. Black, 163 F.3d 188, 195

(3d Cir. 1998). We exercise plenary review over applications of the Federal Tort Claims Act's discretionary function exception. Mitchell v. United States, 225 F.3d 361 (3d Cir. 2000). We review for abuse of discretion the procedures the District Court chooses to follow in connection with the receivership proceedings, including decisions to grant, deny, or modify an injunction. See Black, 163 F.3d at 195; see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

## III. ANALYSIS

In this Circuit we have not yet addressed the standard for a District Court to use when considering whether to lift a receivership stay of litigation. Both parties have urged this Court to adopt the standard laid out by the Ninth Circuit in SEC v. Wencke, 622 F.2d 1363 (9th Cir. 1980) ("Wencke I"), and SEC v. Wencke, 742 F.2d 1230 (9th Cir. 1984) ("Wencke II") (collectively, "Wencke"). For the reasons set forth below, we accept this invitation.

### A. Wencke Standard

In a trilogy of cases in the early 1980s, the Ninth Circuit laid out factors a District Court should consider when deciding whether to partially or wholly lift a stay of litigation entered pursuant to a receivership order. The court in Wencke I affirmed the inherent power of a District Court to enter a valid stay of litigation effective even against nonparties to the receivership action. 622 F.2d at 1369.[1] The court then addressed, somewhat abstractly, the relevant

---

[1]Similar to the instant case, the SEC brought suit in Wencke to have a receiver appointed to manage and investigate the assets of several companies and their controlling individuals after allegations of looting and fraudulent transactions. The district court appointed a receiver and issued an injunction staying all persons from continuing or initiating proceedings against receivership entities without leave of the court. Wencke I, 622 F.2d at 1367 & n.4. A nonparty to the receivership action sought to have the receivership stay lifted to allow it to enforce a state

5

issues presented when deciding whether to exempt a party from the litigation bar.  Id. at 1373-74.  The Wencke II court, faced with an appeal of the district court's refusal to lift the same stay of litigation, set forth a three-part test to be used by a District Court:

> "(1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim."

Wencke II, 742 F.2d at 1231.

In reviewing a district court's refusal to lift a different receivership stay of litigation, the Ninth Circuit reaffirmed the three Wencke factors and clarified that they differ from the normal criteria used by courts for preliminary injunctions.  SEC v. Universal Fin., 760 F.2d 1034, 1308 (9th Cir. 1985).  The test "simply requires the district court to balance the interests of the Receiver and the moving party. . . . [T]he interests of the Receiver are very broad and include not only protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy."  Id.

We agree.  Given how rare non-bankruptcy receiverships are, it is not surprising that we have not yet faced this exact issue[2]–or that few courts around the country have done so.  The

---

court judgment which had granted it a leasehold interest in and possession of one of the receivership entities.  Id. at 1366.

[2]In SEC v. Black, 163 F.3d 188 (3d Cir. 1998), we affirmed a district court's partial lifting of an asset freeze order which was entered in receivership proceedings.  There, though, the district court realized that its initial injunction had been overbroad and the court in fact did not have power over the funds in question.  Id. at 196.  This Court therefore did not have the opportunity to reach the

6

purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant. Nevertheless, an appropriate escape valve, which allows potential litigants to petition the court for permission to sue, is necessary so that litigants are not denied a day in court during a lengthy stay.

A district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate. At the same time, we agree with the Wencke courts that the interests of litigants also need to be considered. Far into a receivership, if a litigant demonstrates that harm will result from not being able to pursue a colorably meritorious claim, we do not see why a receiver should continue to be protected from suit. Cf. Wencke II, 742 F.2d at 1232 (reversing the district court's refusal to lift the stay, seven years into the receivership when the receiver was about to distribute assets and thereby disturb the status quo of the estate). On the other hand, very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties.

We note that when it is asked to lift a stay it would usually be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings. A district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay. See Wencke II, 742 F.2d at 1232. If it appears that a claim has no merit on its face, that of course may end the matter. But, if a claim may have merit–and factual development

question of the standard to use where the district court chose (or declined) to modify an injunction over issues within its jurisdiction. Cf. id. at 197 (finding the third case in the Wencke trilogy, SEC v. Universal Financial, 760 F.2d 1034 (9th Cir. 1985), inapposite "because it relates to a stay of legal proceedings, as opposed to a freeze of assets, applicable to a nonparty").

7

may be necessary to assess this–the district court will have to address the other <u>Wencke</u> factors.

The experiences of other courts dealing with the <u>Wencke</u> standard are instructive. To the best of our knowledge, district courts in three other Circuits besides the Ninth, when considering whether to lift a receivership stay of litigation, have adopted or used the <u>Wencke</u> standard to guide their inquiry. A Maryland district court partially lifted a stay to allow a foreclosure action against property on which the receivership estate also had a judgment lien. <u>United States v. ESIC Capital, Inc.</u>, 685 F. Supp. 483 (D. Md. 1988). The district court admitted that the receivership was only two years old, but concluded that the merits of the asserted claim were "substantial," and that the movant would suffer "substantial injury" if the claim were not allowed to proceed. <u>Id.</u> at 485-86. The district court noted that a simple foreclosure action would be "painless for all concerned." <u>Id.</u> at 486. A New York district court stated that it would have "compare[d] the interest of the receiver and the moving party," but found it unnecessary where the receiver did not object to the partial lifting of a stay. <u>United States v. First Wall St. SBIC, L.P.</u>, 1998 U.S. Dist. LEXIS 9487, at *4 (S.D.N.Y. June 26, 1998) (quoting <u>ESIC Capital</u>, 685 F. Supp. at 485, which cited <u>Universal Financial</u> for the <u>Wencke</u> premise).

Most recently, a district court in Illinois refused to lift a stay of litigation where the receivership had only been in place for three months, the estate's finances were complex, and the movants could not show that they would suffer substantial injury absent permission to sue. <u>FTC v. 3R Bancorp</u>, 2005 U.S. Dist. LEXIS 12503 (N.D. Ill. Feb. 23, 2005). The <u>3R Bancorp</u> court relied solely on the first and second <u>Wencke</u> factors, while appearing to assume that the claim might have merit. <u>Id.</u> at *9; <u>see</u> <u>also</u> <u>FTC v. Med Resorts Int'l, Inc.</u>, 199 F.R.D. 601 (N.D. Ill. 2001) (finding that the first and second <u>Wencke</u> factors, which tipped in the direction of maintaining the receivership stay, outweighed the admittedly strong merits of the asserted claim). Ninth Circuit courts also have continued to use the standard. <u>See, e.g.</u>, <u>SEC v. Capital Consultants, LLC</u>, 2002 U.S. Dist. LEXIS 6775 (D. Or. Mar. 19. 2002); <u>SEC v. TLC Invs. & Trade Co.</u>, 147 F. Supp. 2d

8

1031 (C.D. Cal. 2001); SEC v. Am. Capital Invs., 1996 U.S. App. LEXIS 27685 (9th Cir. Oct. 22, 1996) (NPO).

After consideration of the Wencke factors and their application by courts which have subsequently followed the standard, we are of the view that the Wencke test strikes an appropriate balance between allowing a litigant to choose the timing of his day in court, and respecting the purposes of a receivership stay. Accordingly, we adopt the Wencke standard for use in determining whether to lift a receivership stay. In the future we will review a District Court's decision on whether to lift the receivership stay for abuse of discretion, just like any other choice of procedures chosen by a District Court to effectuate a receivership proceeding. See Black, 163 F.3d at 195; Am. Tel. & Tel. Co., 42 F.3d at 1427; accord Wencke II, 742 F.2d at 1231 ("In reviewing the district court's application of this test and ultimate decision, we apply an abuse of discretion standard.").

Since the District Court did not use Wencke despite the urging of the parties, we must decide whether to remand this case. We agree with the Ninth Circuit that "[w]here the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution." Wencke I, 622 F.2d at 1373. For the reasons set forth below, we agree that the Barracks' claims against the SBA must fail as a matter of law, and that their mismanagement claims can only be brought derivatively and therefore also fail as a matter of law. As a result we have no need to send these claims back to the District Court for consideration under Wencke, and we will affirm the District Court's refusal to lift the stay as to these claims for that reason. As described below, although the District Court erred in concluding that the Barracks' fraud in the inducement claim was derivative, the record is sufficiently developed to allow this Court to apply the Wencke standard to that claim.

## B. Claims Against the SBA

The Barracks would like to assert two classes of claims against the SBA: first, against the SBA as a preferred limited

partner[3] of Acorn for breach of fiduciary duties allegedly owed to the Barracks as co-limited partners; and second, against the SBA for breach of "its statutory and regulatory duties as regulator of Acorn, an SBIC." Motion of Leonard & Lynne A. Barrack for Partial Lifting of Receivership Stay & Injunction, United States v. Acorn Tech. Fund, L.P., No. 03-cv-0070 (E.D. Pa. Nov. 24, 2003). The District Court concluded that the receivership stay should not be lifted to allow the assertion of these claims because they were without merit as a matter of law. Order Denying Motion to Modify Stay at *15, United States v. Acorn Tech. Fund, L.P., No. 03-cv-0070 (E.D. Pa. Aug. 12, 2004) ("District Court Order"). We agree, and will affirm the District Court as to any claims against the SBA.

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., is the exclusive method for suing an administrative agency in tort for monetary damages. 28 U.S.C. § 2679. The so-called discretionary function exception bars:

> "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or *based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency* or an employee of the Government, *whether or not the discretion involved be abused*."

28 U.S.C. § 2680(a) (emphases added).

---

[3]Pursuant to 15 U.S.C. § 683, the SBA purchased participating securities–in the form of a preferred limited partnership interest–from Acorn.

10

The Barracks' claims against the SBA for breaching "statutory and regulatory duties" obviously fall within the discretionary function exception and cannot be maintained. The Barracks argue that their other claims against the SBA were not based on the SBA's actions as regulator, but on the SBA's actions as a preferred limited partner of and investor in Acorn. The SBA supposedly learned that the Torkelsens were looting and otherwise mismanaging Acorn, but failed to tell the other investors, thereby depriving them of this superior information and the opportunity to stop investing. The SBA also, according to the Barracks, erred by not imposing sanctions after these misdeeds were discovered. These actions allegedly breached a fiduciary duty owed by the SBA to co-limited partners.[4] Therefore, the Barracks claim, the suit is not barred by the discretionary function exception. Unfortunately, the Barracks have shown no support for this distinction, nor can we find any.

The SBA provides leverage to a limited partnership SBIC in part by buying participating securities and becoming a preferred limited partner. 15 U.S.C. § 683. The SBA does gain payment priority over other limited partners, as the Barracks stress. 15 U.S.C. § 683(g)(2). All SBICs are also required to supply information to the SBA, and the SBA must examine each SBIC every two years. 15 U.S.C. § 687b(b)-(c) The SBA inevitably, therefore, has superior information to the other investors in an SBIC. This informational advantage is *solely* the result of the SBA's position as regulator, however, as is the SBA's mere presence as a preferred limited partner. The Barracks acknowledge this fact, but still assert that suit against the SBA-as-investor should stand. Appellant Br. at *27-28. The Barracks produce no precedent or support for this position beyond bare assertions. Any suit based on this superior information is fundamentally based on the SBA-as-regulator–not as investor. Even if a preferred limited

[4]Even if the Barracks' claims were not barred by the FTCA, we note that they have produced no New Jersey law to support the argument that a limited partner has a fiduciary duty to other limited partners. However since we conclude that these claims *are* barred, we will not address the fiduciary duty issue.

11

partner owed a fiduciary duty to other limited partners, the Barracks' suit against the SBA cannot be characterized as against another investor–the acts challenged here were taken by the SBA pursuant to its regulatory duties.

We next address whether the SBA's actions here involved discretion, or merely ministerial acts unprotected by the discretionary function exception. The District Court concluded that all of the SBA's acts in question involved "decision[s] committed to the sound discretion of the agency." District Court Order at *18. The Barracks fail even to raise the issue of whether the SBA's actions were discretionary or ministerial, but claim simply that the SBA erred by failing to impose sanctions on Acorn, by negotiating with Acorn Partners to lower management fees, and by failing to inform the Barracks of Acorn's mismanagement. Each of these acts was undeniably taken by the SBA in the exercise of its discretion, and involved "element[s] of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (quotation marks omitted). The SBA's decisions regarding sanctions and management fees were "grounded in the social, economic, or political goals of the statute and regulations," id. at 323, and were not contrary to those statutes or regulations. Cf. Berkovitz v. United States, 486 U.S. 531, 542-43 (1988). The FTCA bars suits based on discretionary decisions. The SBA's decisions fall squarely within the discretionary function exception.

We conclude that regardless of attempted characterization as regulator or investor, the Barracks are attempting to sue the SBA for its discretionary judgment decisions as regulator of Acorn, and run afoul of the FTCA's discretionary function bar. We will therefore affirm the District Court's refusal to lift the stay as to these claims, since if the claims are barred as a matter of law, they cannot be colorably meritorious under Wencke.

## C. Mismanagement Claims Against Acorn

The Barracks next seek permission to sue Acorn and Acorn Partners for mismanagement, alleging that if Acorn had not been mismanaged by Torkelsen, and if Torkelsen had not told them that Acorn was being managed in accordance with federal and state

12

laws, they would not have invested or continued to invest. Appellant Br. at *21, 23. The District Court concluded that these claims could only be brought in a derivative suit by the SBA as receiver for Acorn, and therefore the receivership stay should not be lifted to allow their assertion by the Barracks individually. District Court Order at *10. We agree.

The Barracks' claim, despite creative characterization, reduces to an allegation that they would not have invested, or have lost money on capital already invested, if the company had been properly managed or had disclosed the mismanagement. In this, the Barracks suffered the same wrong as all other investors in Acorn–management misled them as to how the company was being run, and its compliance with various laws, and as an indirect result their investments lost value. There was no special wrong done to the Barracks–the wrong was to the partnership, which lost almost all of its capital as a result of the Torkelsens' alleged looting. This is a classic derivative claim under the Revised Uniform Limited Partnership Act, which New Jersey has adopted. N.J. Stat. Ann. §§ 42:2A-1 to 42:2A-73. The Receivership Order granted all powers possessed by Acorn's limited partners under state and federal law–including the ability to bring derivative suits on behalf of the partnership–to the SBA as receiver. Receivership Order at *2.

We conclude that since the Barracks suffered no direct wrong as a result of the mismanagement and lack of compliance with securities laws, independent of the wrong to the partnership itself, the Barracks cannot bring this claim individually. Since the claim fails individually as a matter of law, the District Court did not err in refusing to lift the receivership stay to allow its assertion.

## D. Fraud in the Inducement Claims Against Acorn

The Barracks' finally seek to assert claims against Acorn and Acorn Partners for fraudulently inducing them to invest based

on the penalty waiver given by Torkelsen.[5]  The District Court concluded that these claims too were derivative in nature and therefore failed as a matter of law.  District Court Order at *11, 14-15.  Here, we disagree with the District Court.

The District Court correctly acknowledged that fraud in the inducement claims are generally individual claims.  District Court Order at *13 (citing Golden Tee, Inc. v. Venture Golf Sch., Inc., 969 S.W. 2d 625 (Ark. 1998)).  However, the District Court characterized the Barracks' only damages as "diminution in value of their investment."  Id.  On the contrary, the Barracks may have suffered a wrong independent of the general wrong to the partnership from mismanagement, and separate from any other investor, by an invalid waiver extended to them by Torkelsen.  The Barracks may be able to make out a colorable individual claim for fraud in the inducement; therefore it was error for the District Court to prematurely conclude that the claim failed as a matter of law for want of being brought derivatively.

It is not the end of our inquiry, though, to conclude that the fraud in the inducement claims can be properly brought individually instead of only derivatively.  The claims could of course still lack merit.

Fraud in New Jersey requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005) (quoting Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997)); see also Travelodge Hotels, Inc. v. Honeysuckle Enters., 357 F. Supp. 2d

---

[5]The Barracks also assert claims based on an alleged breach of the waiver agreement, but these claims depend on whether a valid waiver existed, and are only an argument-in-the-alternative to the fraud in the inducement claim.  Since as noted the SBA conceded at argument that either of these claims might have merit, we will address the claims jointly.

788, 796 (D.N.J. 2005) (citing these factors as constituting fraud in the inducement in New Jersey). The District Court concluded that the waiver was inherently invalid and the Barracks' reliance on it, unreasonable as a matter of law. Id. at *14. These conclusions were premature.

Torkelsen's letters extending the penalty waiver, as head of Acorn's general partner, purported to "waive penalties in advance" for failing to fulfill a subscription agreement, and thereby allow the Barracks in the future to make additional capital contributions if they so wished. A59. Section 3.4.2. of the Limited Partnership Agreement, though, states that the "General Partner may, in its sole discretion (and *with the consent of SBA given as provided in Section 5.2.* of this Agreement), elect to declare, by notice" that the limited partner's commitment is reduced to the capital contribution already made, discharging further obligation to Acorn. Id. (emphasis added). The District Court stated, without factual inquiry, that "it is clear that SBA consent was never obtained by or for the benefit of the Barracks." District Court Order at *14. The issue is not so clean-cut. The Limited Partnership Agreement makes provision for the SBA to consent *by silence*:

> "If the Partnership has given the SBA thirty (30) days prior written notice of any proposed legal proceeding, arbitration or other action under the provisions of the Agreement with respect to any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement and for which SBA consent is required as provided in Section 5.2.3., and *the Partnership shall not have received written notice from the SBA that it objects* to such proposed action within such thirty (30) day period, *then SBA shall be deemed to have consented* to such proposed Partnership action."

15

Limited Partnership Agreement § 5.2.4. (emphases added).

The District Court did not address the issue of consent by silence. If such consent did issue, then the Barracks' reliance on the waiver may have been reasonable, and they might be able to make out a colorable fraudulent inducement claim.

The SBA conceded at argument that the Barracks' fraud in the inducement and breach of contract claims might have merit, and therefore may satisfy the third prong of Wencke depending on discovery. We must therefore address the other Wencke factors.

We first ask "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed." Wencke II, 742 F.2d at 1231. The Barracks claim that the SBA has already disturbed the status quo by filing suit to recover the money allegedly due on the Subscription Agreements. See, e.g., Appellant Br. at *13 ("[T]he Receiver's actions belie any purported interest in maintaining the status quo."). This argument misunderstands the purpose and practice of a receivership. One of the SBA's key functions as receiver is to marshal the receivership estate's assets. The SBA's suit against the Barracks is simply one step in that direction. The Wencke II court, the only court to ever find that the *receiver* was the party seeking to disturb the status quo, was faced with the far different situation where the receiver was preparing to distribute the assets. 742 F.2d at 1231. That is simply not the case here.

The Barracks next argue that they would "suffer substantial injury" if the stay is not lifted, "because of the real possibility that they would be precluded from asserting those claims in the future." Appellant Br. at *13. We find this argument unpersuasive for two reasons. First, as noted by the SBA, the Barracks can obtain discovery in the original SBA-Barrack suit. Government Br. at *36, 47 n.8. This discovery should help illuminate the question of the waiver's validity. We do not comment on the issue of whether the availability of a defense has any bearing on the ability of a party to bring a counterclaim. However, since successful assertion of the waiver in either posture would result in a discharge of the

16

Barracks' obligation to make future payments, we do not see how refusing to order the stay lifted would result in substantial injury. Second, while it is true that if the waiver is invalid, the Barracks would prefer to seek rescission of both Subscription Agreements and the return of their $750,000, this argument in no way shows that substantial injury would result if the Barracks were forced to wait until the SBA was finished disentangling the receivership estate. Where other courts have found the first Wencke factor to tip in favor of lifting a receivership stay, the degree of injury has been far more severe. For instance, in ESIC Capital, an unemployed single mother was unable to support herself absent regaining control of contested real estate. 685 F. Supp. at 485. Likewise, in Wencke II, the receiver was preparing to distribute stock to other investors, against whom the petitioning shareholders might have had no legal recourse. 742 F.2d at 1232. What is *not* sufficient is a clear attempt by the Barracks to withdraw funds from the receivership estate before the receiver is ready to distribute funds to *all* creditors. Not being allowed the first bite at the apple is not the kind of substantial injury we will recognize under the first prong of Wencke.

We will next address the second Wencke factor, the "time in the course of the receivership at which the motion for relief from the stay is made." Wencke II, 742 F.2d at 1231. Contrary to the Barracks' assertions, the SBA has not "conceded that the timing is proper" by filing suit to recover the Barracks' subscription funds. Appellant Br. at *13. As we have already said, the very purpose of a receiver is to collect and disentangle a receivership estate's assets, including debts owed to it. In carrying out that purpose, the receiver simply does not consent to the bringing of a counterclaim by every debtor.

When the Barracks first asked the District Court to lift the stay, the receivership had been in place for only ten months. It has now been in effect for 30-36 months. We are reluctant to set a clear cut-off date after which a stay should be presumptively lifted. The second Wencke prong is inherently case-specific, and of course, merely one of three linked considerations. The Wencke II court lifted a stay after seven years, but focused primarily on the fact that no new facts had been discovered in six years, and that the

17

receiver was ready to distribute the assets. 742 F.2d at 1232. The Wencke I court had refused to lift the same stay after a mere two years. Wencke I, 622 F.2d at 1374; see also ESIC Capital, 685 F. Supp. at 485 ("[T]his motion comes at a fairly youthful age of the receivership – two years since its inception."). The Ninth Circuit in Universal Financial denied a motion to lift a four-year-old stay where "material facts continue to come to light." 760 F.2d at 1039. In this case, where the alleged fraud encompassed many individuals and companies, we cannot say that the timing factor tips in the Barracks' favor. See 3R Bancorp, 2005 U.S. Dist. LEXIS 12503, at *9.

Upon consideration of all three Wencke factors, even though the Barracks' proposed claims may have merit, the other factors do not weigh in favor of allowing them to assert these claims at the present time. While it is true that "[t]he receivership cannot be protected from suit forever," Wencke II, 742 F.2d at 1231, we find that the Barracks have not carried their burden of proving that the stay should be lifted.

## IV. CONCLUSION

We conclude that the District Court erred in determining that Appellants' fraud in the inducement claims a) could only be brought derivatively; and b) were without merit as a matter of law. However, based on an analysis of the other Wencke factors set forth by the Ninth Circuit for determining whether to lift a stay on litigation entered pursuant to receivership proceedings, we affirm the District Court's refusal to lift the stay as to these claims. Since non-colorable claims also present no basis for lifting a receivership stay, we affirm the District Court's refusal to lift the stay to allow the assertion of mismanagement claims against Acorn or Acorn Partners, and any claims against the SBA.