**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-2172**

───────────────

MARTIN SMILEY; RONALD DURANDO; ABRAHAM BIDERMAN; GUSTAVE DOTOLI; EDWARD SUOZZO,

       Plaintiffs – Appellants,

   v.

ANSHU BHATNAGAR,

       Defendant – Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, Senior District Judge.  (8:20-cv-02633-PWG)

───────────────

Argued:  October 26, 2022                  Decided:  April 17, 2023

───────────────

Before NIEMEYER, DIAZ, and RUSHING, Circuit Judges.

───────────────

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

───────────────

**ARGUED:** Thomas C. Costello, COSTELLO LAW GROUP, Towson, Maryland, for Appellants.  Tamar S. Wise, COZEN O'CONNOR, New York, New York, for Appellee. **ON BRIEF:** Anne L. Preston, COSTELLO LAW GROUP, Towson, Maryland, for Appellants.  Joseph P. Dever, Jr., COZEN O'CONNOR, New York, New York, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Martin Smiley and four other shareholders of mPhase Technologies, Inc., sued Anshu Bhatnagar, mPhase's Chief Executive Officer (CEO), for breach of contract, fraud, negligent misrepresentation, and breach of fiduciary duty. The district court granted Bhatnagar's motion to dismiss, concluding the claims were derivative and must be brought on behalf of the corporation. We largely agree with the district court but vacate and remand as to the fraud and negligent misrepresentation claims, which are based, at least in part, on allegations of special injury.

I.

Plaintiffs allege the following facts, which we accept as true when considering Bhatnagar's motion to dismiss. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Plaintiffs are shareholders of mPhase, a publicly held microfluidics and nanotechnology company incorporated in New Jersey. They are the former Chief Financial Officer and General Counsel, CEO and President, Chief Operating Officer, and Directors of mPhase. Before January 2019, Plaintiffs collectively held the majority of common shares, voting control over mPhase's board of directors, and management control over the company's operations.

On behalf of mPhase, Plaintiffs negotiated for Bhatnagar to take over control and management of the company. The negotiations continued for years, during which Plaintiffs satisfied Bhatnagar's preliminary requests to reduce mPhase's debt obligations, most of which were owed to Plaintiffs, and to update its regulatory filings. Then, in late 2018 and early 2019, Bhatnagar attended three meetings with Plaintiffs, during which the parties

2

reached an agreement whereby Plaintiffs would relinquish control and management of mPhase to Bhatnagar in exchange for certain promises. Specifically, Bhatnagar assured Plaintiffs he would not engage in any transaction that would cause mPhase to issue stock below a certain price floor for the first three years he was CEO. He also promised to use capital Plaintiffs raised in the future to satisfy an mPhase debt obligation known as the "Fife Debenture." J.A. 38. Without these promises, Plaintiffs were unwilling to transfer control of mPhase, resign their positions with the company, or agree to reduce or subordinate additional mPhase debt obligations owed to them personally. In January 2019, mPhase executed a Transition Agreement with Bhatnagar, pursuant to which Plaintiffs resigned their officer and director positions, Bhatnagar assumed the role of CEO, and mPhase's debt to Plaintiffs was converted to equity.

Plaintiffs allege that Bhatnagar subsequently violated the Transition Agreement and his assurances to them in two ways. First, Bhatnagar used the capital Plaintiffs raised to fund a new venture instead of paying off the Fife Debenture as promised. Second, Bhatnagar arranged financing transactions without the promised price floor protections, resulting in the issuance of convertible debentures that ultimately diluted the value of Plaintiffs' stock. According to Plaintiffs, Bhatnagar undertook those transactions to help him fulfill the conditions of his earnout of common stock, resulting in his current status as the majority shareholder with voting control of mPhase.

Plaintiffs sued Bhatnagar in Maryland district court for breach of contract, fraud, negligent misrepresentation, and breach of fiduciary duty. They seek at least $5 million in damages, which Plaintiffs attribute to the diminution in value of their collective shares. In

3

addition, Plaintiffs assert that Bhatnagar's allegedly deceptive conduct caused the loss of their status as majority shareholders with voting control, loss of their director and officer positions, loss of salaries and fees for services paid by mPhase, and loss of personal debt obligations converted to equity in the transfer of control.  Bhatnagar moved to dismiss for lack of so-called "shareholder standing," and the district court granted the motion. Plaintiffs timely appealed.

## II.

"We review de novo the grant of a motion to dismiss for failure to state a claim, applying the same standards as the district court." *Fairfax v. CBS Corp.*, 2 F.4th 286, 291 (4th Cir. 2021) (internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6).  Like the parties and the district court, we will apply New Jersey law to the shareholder standing issue because mPhase is a New Jersey corporation.  *See Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 643 (D. Md. 2020) ("Maryland courts follow the 'internal affairs doctrine,' which requires application of the law of the state of incorporation to matters 'peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.'" (quoting *NAACP v. Golding*, 679 A.2d 554, 559 (Md. 1996))).

Generally speaking, "[r]egard for the corporate personality demands that suits to redress corporate injuries which secondarily harm all shareholders alike are brought only

by the corporation." *Strasenburgh v. Straubmuller*, 683 A.2d 818, 829 (N.J. 1996) (internal quotation marks omitted); *see Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (explaining this "longstanding equitable restriction").  New Jersey courts follow the prevailing rule that individual stockholders "cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations" but instead "must seek recovery derivatively in behalf of the corporation." *Strasenburgh*, 683 A.2d at 829 (internal quotation marks omitted).  However, if the wrong causes a "special injury," shareholders may sue directly.  *Id.* at 829–830.  "A special injury exists where there is a wrong suffered by a plaintiff that was not suffered by all stockholders generally" or "a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation."  *Id.* (internal quotation marks and brackets omitted).  Wrongful conduct can give rise to both derivative and direct actions, and "a thin line often separates" the two.  *Id.* at 830.

To determine whether Plaintiffs' claims are derivative or direct, we consider "the nature of the wrongs alleged in the body of the complaint, not [Plaintiffs'] designation or stated intention."  *Id.* at 830.  As the district court observed, Plaintiffs allege that Bhatnagar, acting out of self-interest as the CEO of mPhase, used capital to fund a new venture rather than pay off a corporate debt, caused the company to issue stock at a value below the price floor, and issued convertible debentures that ultimately diluted the value of mPhase common stock.  These wrongs against the corporation allegedly injured all shareholders by causing a diminution in share value.  "Actions that have the effect of depressing stock value

5

harm all shareholders and are therefore classed as giving rise to derivative claims." *Id.* at 831; *see also id.* at 830 ("Claims of breach of fiduciary duty . . . will also be generally regarded as derivative claims unless the injury to shares is distinct."). We agree with the district court that Plaintiffs' claims against Bhatnagar for actions he took as CEO of mPhase are derivative and cannot be brought individually.

The district court also correctly rejected Plaintiffs' request to treat their derivative claims as direct on the ground that mPhase is a closely held corporation. Plaintiffs allege that mPhase is "a publicly-held company," J.A. 33, and they identify no allegations supporting an inference that mPhase is closely held, as that term is understood in New Jersey law. *See*, *e.g.*, *Balsamides v. Protameen Chems., Inc.*, 734 A.2d 721, 734 (N.J. 1999) (noting that "shares of stock in a closely-held corporation" have "no readily available market"); *Dugan v. Dugan*, 457 A.2d 1, 5 (N.J. 1983) ("The value of stock in a closely held corporation is not fixed by public trading.").

Plaintiffs partly base their fraud and negligent misrepresentation claims, however, on allegations that Bhatnagar, before becoming CEO of mPhase, made false statements to them that caused them special injury. Specifically, during Plaintiffs' negotiations with Bhatnagar, he falsely assured them that he would use future capital to satisfy the Fife Debenture and that he would not, for a period of three years, cause mPhase to engage in any financing that would cause the company to issue stock at a value below the agreed-upon price floor. Without these promises, Plaintiffs aver, they were "not willing to transfer control of mPhase to Bhatnagar, resign their positions with the [c]ompany[,] or agree to reduce/subordinate additional mPhase debt obligations owed personally to them." J.A. 38.

6

Plaintiffs have alleged special injuries unique to them resulting from this wrongdoing: loss of their positions as officers and directors of mPhase, loss of salaries and fees for services paid by mPhase, and "loss of personal debt obligations owed to them by mPhase which they converted into equity on January 11, 2019." J.A. 45. Plaintiffs may pursue these claims directly. *See*, *e.g.*, *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 447 (3d Cir. 2005) ("[F]raud in the inducement claims are generally individual claims.").

Bhatnagar urges us to affirm on the alternative ground that Plaintiffs' complaint fails to state a claim for fraud or negligent misrepresentation. We decline to address these arguments initially on appeal and instead remand for the district court to consider them in the first instance. *See* J.A. 128 (district court explaining that the dismissal was without prejudice because the court had not determined the merits of Plaintiffs' claims). Accordingly, we affirm the district court's dismissal of Plaintiffs' breach of contract and breach of fiduciary duty claims as derivative; vacate the dismissal of Plaintiffs' fraud and negligent misrepresentation claims, which are not entirely derivative; and remand for further proceedings.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*